### THE DAUNTLESS NO. 6.

### NIELSON et al. v. UNITED STATES et al.
### No. 18567.

United States District Court
E. D. New York.

May 15, 1953.

Pyne, Lynch & Smith, New York City, by Anthony V. Lynch, Jr., New York City, Advocate, for the libellant.

Frank J. Parker, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., by Gilbert S. Fleischer, Advocate, New York City, for respondent.

GALSTON, District Judge.

On April 6, 1946 the tug Dauntless No. 6 sustained damage while assisting in the docking of the Christopher Gale at 52nd Street, Brooklyn.

The facts are fairly clear. Several days before the accident a representative of the Luckenbach Steamship Company as general agent for the United States of America, the owner of the Christopher Gale, arranged for the towage of the vessel from Hoboken to the 52nd Street pier in Brooklyn. Tarr, who was the acting operating manager of the Luckenbach Company, admitted that at the time he made the arrangement for the towage he was aware of the terms of the so-called pilotage agreement of the conditions of towing. The pilotage agreement is in evidence as Exhibit 1. In arranging for the towage he testified that he relied upon the Dauntless Towing Line to furnish a sufficient number of tugs to carry out the towage.

The towage was undertaken by the tugs Dauntless No. 6 and Dauntless No. 9, and a docking pilot, Robert Nelson, was dispatched to the Hoboken yard on the morning of April 6th. The vessel then proceeded down the river to the southard of Governor's Island, and then down the Bayridge channel to a point in the vicinity of 52nd Street and Pier 1, Bush Docks. The tugs followed the ship down as she was proceeding under her own power and did not need

the assistance of the tugs in the open waters of the Bay.

Nelson was on the bridge of the Gale and gave orders to the tugs and to the engine and helm of the Gale, when approaching 52nd Street. He directed the No. 6 to take a position on the port bow, and No. 9 on the port quarter of the ship.

It is important to note that at the time of the occurrence, the tide was flood, and the wind was southwest, blowing in gusts with a strength of about twenty to twenty-five miles per hour.

The ship was maneuvered so as to swing between Pier 1, Bush, and 52nd Street, but at the time the wind and the tide caused the port bow of the Gale to sag down toward the southerly corner of Pier 1. An effort to control the sag by letting the starboard anchor go was unsuccessful, and the pilot blew for the Dauntless No. 6 to give an extra jingle and go full ahead. When the captain of the Dauntless No. 6 realized that a collision was imminent, he ordered his strong line to be slackened, and tried to go ahead so as to prevent the tug from being crushed by the ship against the dock. But his efforts were unsuccessful. It should be noted too that at no time did the pilot give the Dauntless No. 6 an order to pull away.

[1] It would seem that the sole cause of the accident was the negligence of the docking pilot in his attempt to enter the slip knowing that he could not overcome the force of the wind and tide and keep the Christopher Gale from sagging down on Pier 1. The maneuvers of the tug Dauntless No. 6 did not contribute to the accident. The damage caused to the Dauntless No. 6 must be laid to the fault of the pilot of the Christopher Gale.

■ The pilotage clause of the towage contract does not relieve the respondents from responsibility. Such clause in common use in and around the New York Harbor reads as follows:

"When the captain of any tug furnished to or engaged in the service of assisting a vessel which is making use of her own propelling power goes on board said vessel, or any other licensed pilot goes on board said vessel, it is understood and agreed that said tugboat captain or licensed pilot becomes the servant of the owners of the vessel assisted in respect to the giving of orders to any of the tugs furnished to or engaged in the assisting service and in respect to the handling of such vessel, and neither those furnishing the tugs and/or pilot nor the tugs, their owners, agents, or charterers shall be liable for any damage resulting therefrom."

I had occasion to consider this clause in Dalzell v. The New York, D.C., 77 F.Supp. 793, 795, and wrote:

"Nor can any fault, of course, be ascribed to the tug Lloyd Dalzell. She was under orders from those in command of the Christian Holm [the steamer which was being assisted]. The pilotage clause of the towage contract imposed responsibility on the owner of the vessel which was assisted by the tug. That Romano [the pilot who was on the bridge of the ship] was in the general employ of the libellant cannot relieve the impleaded respondent of liability".

See also: Moran Towing & Transportation Co., Inc., v. Navigazione Libera Triestina S. A., 2 Cir., 92 F.2d 37, certiorari denied 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575; Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; Mathiasen Towing Co. v. United States, D.C., 87 F.Supp. 216, 1949 A.M.C.1831.

■ The libellant may have a decree against the respondent, United States of America. The libel against the Luckenbach Steamship Company, as agent for the United States of America, will be dismissed under the ruling of the Supreme Court in Cosmopolitan Shipping Company v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.