## UNITED STATES, AS OWNER OF THE CHRISTOPHER GALE, *v.* NIELSON ET AL., TRADING AS DAUNTLESS TOWING LINE.

No. 210.  Argued March 1, 1955.—Decided May 16, 1955.

*Ralph S. Spritzer* argued the cause for the United States.  With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Burger* and *Samuel D. Slade.*

*Anthony V. Lynch, Jr.* argued the cause and filed a brief for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

The respondent, Dauntless Towing Line, contracted to use two of its tugs in assisting the United States, petitioner here, move its steamship *Christopher Gale* from Hoboken to a Brooklyn pier.  The *Gale* was to move under its own propelling power under guidance of one of respondent's tugboat captains or some other licensed

pilot. The contract further provided that a tugboat captain or pilot going on board would become the "servant of the owners of the vessel assisted in respect to the giving of orders to any of the tugs furnished to or engaged in the assisting service and in respect to the handling of such vessel, and neither those furnishing the tugs and/or pilot nor the tugs, their owners, agents, or charterers shall be liable for any damage resulting therefrom." One of the respondent's tug captains went aboard the government vessel to pilot it in connection with the moving operation. The two tugs of respondent were at the time fastened to the *Gale* by lines to help guide its movements. One of the tugs was crushed between the *Gale* and a pier while attempting to carry out a maneuver under orders of the tug captain piloting the *Gale*.

The respondent brought this suit in admiralty to recover damages from the United States alleging that damages to the tug were caused by negligent pilotage orders of the tug captain while temporarily acting as "servant" of the *Gale*. After hearings the District Court found that the damages were caused by the pilot's negligence "in persisting in his attempt to enter the slip after he knew or should have known that he could not overcome the force of the wind and tide and keep the CHRISTOPHER GALE from sagging down on Pier 1." On this finding the District Court entered a decree requiring the United States to pay respondent for damages brought about by this negligence. This decree was entered over the Government's contention that the contract was invalid if construed as exempting respondent from liability for its own servant's negligence. 112 F. Supp. 730. Agreeing with the District Court's reasoning and decree, the Court of Appeals affirmed. 209 F. 2d 958. We granted certiorari to consider the meaning and validity of the pilotage

clause, 348 U. S. 811, and at the same time granted certiorari in two other cases, today decided, which involve validity of contracts exempting towers from liability for negligent towage. *Bisso* v. *Inland Waterways Corp., ante,* p. 85; *Boston Metals Co.* v. *The Winding Gulf, ante,* p. 122.

*Sun Oil Co.* v. *Dalzell Towing Co.,* 287 U. S. 291, involved the meaning and validity of a pilotage contract substantially the same as the one here. One of Dalzell's tug captains negligently piloted Sun Oil's vessel causing the boat to ground and suffer damages. Sun Oil sued Dalzell. The contract exempting Dalzell from liability for pilotage was pleaded as a defense. This Court held that the tug company could validly contract against being "liable for any damage" caused by the negligence of one of its captains in piloting Sun Oil's vessel and construed the contract there as having that effect. The question in this case, however, is whether the agreement of the ship being piloted to release the tug company from being "liable for any damage resulting" from negligent pilotage not only relieves the tug company from liability for damage, but allows it affirmatively to collect damages for injury to its own tug due to negligent pilotage by one of its tug captains.

An agreement that one shall not be liable for negligence of a third person cannot easily be read as an agreement that one is entitled to collect damages for negligence of that third person. And there is no reason to stretch contractual language to force payment of damages under circumstances like these. A person supplying his own employees for use by another in a common undertaking cannot usually collect damages because of negligent work by the employee supplied. Clear contractual language might justify imposition of such liability. But the con-

tractual language here does not meet such a test and we do not construe it as authorizing respondent to recover damages from petitioner.

*Reversed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, whom MR. JUSTICE REED joins, dissenting.

The pilotage clause agreed to by the parties herein states that—

> "When the captain of any tug furnished to or engaged in the service of assisting a vessel which is making use of her own propelling power goes on board said vessel, or any other licensed pilot goes on board said vessel, *it is understood and agreed that said tugboat captain* or licensed pilot *becomes the servant of the owners of the vessel assisted . . . .*" (Italics supplied.)

According to the above agreement, petitioner contracted to make the tug captain, while serving in this capacity, its servant. Recognizing the validity of this agreement, I would give full effect to its expressed purpose. Accordingly, I would affirm the judgment of the Court of Appeals.