ISLAND CREEK FUEL and TRANS-
PORTATION COMPANY, DELA-
WARE, a corporation, Libellant,

v.

KENOVA TERMINAL COMPANY, a
corporation, Respondent.

No. 867.

United States District Court
S. D. West Virginia,
Huntington Division.

April 18, 1957.

Selden S. McNeer, Huntington, W. Va., for libellant.

Edward B. Hayes, Chicago, Ill., Jackson N. Huddleston, Huntington, W. Va., for respondent.

HARRY E. WATKINS, District Judge.

Exceptor-libellant Island Creek relies upon the case of Bisso v. Inland Waterways Corporation, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, 1955 A.M.C. 899, which along with two other cases decided the same day (May 16, 1955), Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 75 S.Ct. 649, 99 L.Ed. 933, 1955 A.M.C. 927, and United States v. Nielson, 349 U.S. 129, 75 S.Ct. 654, 99 L.Ed. 939, 1955 A.M.C. 935, held that clauses in contracts exculpating a towboat owner for its negligence in towing craft are contrary to public policy and invalid.

Respondent relies upon the well-established rule that where considerations of public policy do not overrule, the parties are free to contract as they please, citing cases of marine bailment, Commercial Molasses Corp. v. N. Y. Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89; of pilotage agreements, Sun Oil Co. v. Dalzell Towing Co., Inc., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; of contracts for sale and installation of marine equipment, Newport News Shipbuilding & Dry Dock Co. v. United

States, 4 Cir., 34 F.2d 100; and non-maritime cases, Shafer v. Reo Motors, Inc., 3 Cir., 205 F.2d 685, and Standard Insurance Co. of New York v. Ashland Oil & Refining Co., 10 Cir., 186 F.2d 44.

Ruling upon the exception thus boils down to determining whether the relationship of the parties here is more analogous to contracts of towage or to other types of contracts. Looking to the facts (and we are now limited to only such facts as are disclosed by the pleadings), it appears that libellant's barge was delivered to respondent, and on May 3, 1955, was loaded by respondent with coal. Respondent is engaged in the business of loading coal from railroad hopper cars onto barges in the Ohio River. While the barge was in the care of respondent, after it had been loaded and moored, it sank. Respondent denies liability, among other reasons, by reason of an indemnity agreement entered into between the parties on November 29, 1954, whereby Island Creek, libellant, agreed to save Kenova Terminal, respondent, harmless from all losses

" * * * by reason of any acts done by or resulting from the loading of said barges or other vessels, or acts done in connection with the movement of said barges or other vessels either prior to or subsequent to the loading thereof even though they were caused or contributed to by the negligence of Kenova Terminal Company, or its officers, agents, servants, and employees."

Libellant excepts to that defense because it is in effect a release from all future liability for respondent's negligence and therefore, libellant urges, absolutely void on its face.

Although not mentioned in the exception, libellant's brief raises the additional point that the barge in question sank while moored, and libellant urges that this indemnity agreement does not apply because it only covered losses occasioned by (1) loading the barge, or (2) moving it. Since this defense is not a part of the exception, it is not necessary or proper to decide this question now.

Libellant relates this case to the rationale of the Supreme Court's Bisso case by pointing out that in both cases personal property was delivered into the hands of the respondent; in each case the respondent was engaged to do something with that property—in the Bisso case to tow it to a destination, here to load it with coal; in each case to be returned to the possession of libellant after the particular service had been performed;[1] in each case the property was in the sole and exclusive possession of respondent when the damage complained of was done; and in each case respondent sought by contract to avoid liability for its negligence.

These same comparisons, however, will hold true when the facts of the instant case are compared with a group of cases which hold that a person who is to make some repairs to a ship may contract with the shipowner absolving the repairman from liability for his own negligence. See Hall-Scott Motor Car Co. v. Universal Ins. Co., 9 Cir., 122 F.2d 531, where that court cites as a leading case on this subject a Fourth Circuit case, Newport News Shipbuilding & Dry Dock Co. v. United States, 34 F.2d 100. In the Newport News case, a ship owned by the United States was damaged by fire due to the negligence of the shipyard where the ship was undergoing repair. The majority stated:

"We agree with the judge below when he said:
" 'There can be no doubt, I think, that a contract whereby the United States agreed to assume all liability for damage to its vessel while at the yard would be valid. Santa Fe P. & P. Railway Co. v. Grant, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787.' "
34 F.2d at page 106.

In dissenting, Judge Parker agreed with the majority that a contract could validly be made which relieved the shipyard

1. The pleadings here do not show this, but it can fairly be implied.

from liability for its negligence, but he did not feel such a contract was present in that particular case.

The relationship between the parties here did not concern towage. Nothing is presented from the pleadings in this case which would indicate that it should be brought within the scope of those cases where public policy demands that these exemption clauses be held invalid. In situations where there is an inherent disparity in bargaining power, such as cases dealing with common carriers, the courts and Congress have given effect to overriding considerations of public policy; e. g., the Harter Act, 46 U.S.C.A. § 190 et seq., which prescribes the limits to which a common carrier on inland waters may exempt itself from its own negligence. The Supreme Court in the Bisso case, supra, brought contract towage operations into this limited area where dominant parties to a contract are not free to secure exemption for loss or damage caused by their own negligence. There again the Court was dealing with a situation where by operation of law a party had been placed in a position to drive a hard bargain, and under those circumstances the Court deemed it proper to limit that party's freedom to contract, relying in substantial part upon the case of Cornell Steamboat Co. v. United States, 321 U.S. 634, 64 S.Ct. 768, 88 L.Ed. 978. The Cornell case had established that towage operations, whether by common carriers or contract carriers, were within Part 3 of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq., with the result that one who tows non-exempt commodities is required to possess a certificate of convenience and necessity. Requiring that certificate had the effect of giving such persons a limited monopoly and gave them the disparity of bargaining power upon which the courts of this country have based restrictions upon the freedom to contract.

■ However, as stated in Commercial Molasses Corp. v. N. Y. Barge Corp., supra, 314 U.S. at page 110, 62 S.Ct. at page 160:

"But, as the court below held, the bailee of goods who has not assumed a common carrier's obligation is not an insurer. His undertaking is to exercise due care in the protection of the goods committed to his care and to perform the obligation of his contract including the warranty of seaworthiness when he is a shipowner. * * * Petitioner apparently does not challenge the distinction which for more than two centuries since Coggs v. Bernard, supra, has been taken between common carriers and those whom the law leaves free to regulate their mutual rights and obligations by private arrangements suited to the special circumstances of cases like the present. Nor do we see any adequate grounds for departing from it now or for drawing distinctions between a private bailment of merchandise on a barge in New York harbor and of goods stored in a private warehouse on the docks. Neither bailee is an insurer of delivery of the merchandise; both are free to stipulate for such insurance or for any lesser obligation, in which case the bailor cannot recover without proof of its breach."

■ The case at bar, involving a bailment, is not analogous to that of a common carrier nor a towage contract, so there are no overriding considerations of public policy. Restatement, Contracts Sections 574, 575. As was stated in a case concerning a pilotage exemption clause:

"* * * 'There is no rule of public policy which denies effect to their expressed intention, but, on the contrary, as the matter lies within the range of permissible agreement, the highest public policy is found in the enforcement of the contract which was actually made.'" Sun Oil Co. v. Dalzell, supra, 287 U.S. at page 294, 53 S.Ct. at page 136.

It is worthy of note that the Supreme Court distinguished the Sun Oil case in the Bisso case, reaffirming its position of allowing pilotage exculpatory con-

**482**

tracts. It is therefore clear that the Court was not, in the Bisso case, laying down any general rule for all maritime cases. The Court's opinion indicates it was merely applying general principles to the peculiar situation concerning towage contracts. It has since been held that the Bisso case does not apply to common carriers when not performing common carrier duties:

"In our judgment, the Bisso, Boston Metals, and Nielson cases do not impair the long-existing doctrine that a common carrier, when not performing its duties as such in relation to shippers and passengers, may lawfully contract for assumed responsibility by another party, for release from negligence, and even from indemnity in cases involving its own negligence." Pennsylvania Railroad Co. v. Chesapeake & Ohio R. Co., 6 Cir., 229 F.2d 721, 729.

For the reasons stated above, libellant's exception to respondent's answer is overruled.