287 F.2d 852
 Emmett GRAY, G & H Towing Company and Maritime Overseas Corporation, Appellants,
v.
Edwin E. JOHANSSON, Kansas City Bridge Company, Merritt-Chapman & Scott Corporation, and Pelican Island Development Corporation, Appellees.
 No. 18619.
 United States Court of Appeals Fifth Circuit.
 March 15, 1961.
 Rehearing Denied May 3, 1961.
 
 Eastham, Watson, Dale & Forney, Houston, Tex., Clarence S. Eastham, Alan S. Dale, Houston, Tex., of counsel, for Maritime Overseas Corp. appellant-appellee.
 Royston, Rayzor & Cook, Galveston, Tex., Robert Eikel, Houston, Tex., for appellant, G & H Towing Co.
 Robert Eikel, Houston, Tex., for appellant Emmett Gray.
 Preston Shirley, Griffith D. Lambdin, Galveston, Tex., McLeod, Mills, Shirley & Alexander, Galveston, Tex., for appellees, Edwin E. Johansson, Kansas City Bridge Co., Merritt-Chapman Scott Corp., and Pelican Island Development Corp.
 Before TUTTLE, Chief Judge, HUTCHESON, Circuit Judge, and CLAYTON, District Judge.
 HUTCHESON, Circuit Judge.
 
 
 1
 This appeal is from findings and a judgment in admiralty in favor of the libellants, in a suit brought by them as owners of pipe lines, for damages resulting from their negligent destruction in the course of shifting the M/V Har Canaan as a dead ship to a slip in Galveston Harbor.
 
 
 2
 A great deal of testimony was taken on the issue of fault, and the district judge made full findings in effect that the destruction of the pipe lines was due to the negligence of the respondent, Emmett Gray, port captain for G & H Towing Co., who was furnished by it as a pilot for the dead ship movement.
 
 
 3
 Based on these findings, the court adjudged: (1) Gray liable; (2) the Har Canaan liable in rem; (3) Maritime Overseas, owner of the Har Canaan, not liable in personam; and (4) G & H Towing Co., the employer and furnisher for the movement of Emmett Gray, its port captain liable in personam. He also denied and awarded indemnity as follows:
 
 
 4
 "Thus, as to the liability over between the several respondents, the following conclusions are made.
 
 
 5
 "6. G & H Towing Company and Captain Emmett Gray are not entitled to indemnity from Maritime Overseas Corporation, or from the Har Canaan, for any payment they may be required to make under the decree to be entered herein.
 
 
 6
 "7. Maritime Overseas Corporation, as claimant of the Har Canaan, is entitled to indemnity from Captain Emmett Gray, individually, and from G & H Towing Company for any liability it will have to libellants under the decree to be entered herein. The liability of Captain Gray and G & H Towing Company to Maritime Overseas will be joint and several."
 
 
 7
 Gray, as the respondent held primarily liable, here insisting that the findings and conclusions, that he was negligent in handling the ship so as to cause injury to the pipe lines, are clearly erroneous, launches massive attacks upon the findings, that he was negligent, and urges upon us that the cause of the injury to the pipe lines was negligence not on his part but on the part of the pipe line owners in not properly laying and maintaining the lines in place and in not clearly and properly marking their location.
 
 
 8
 The other appellants join him in this attack and argue mightily that the district judge has misconceived what actually occurred and that the findings of negligence are against the truth and right of the case.
 
 
 9
 The G & H Towing Company, in addition to its attack upon the negligence findings of the court, strongly attacks the court's conclusion, that the clause in its contract providing in effect that it would not be liable for the acts of pilots furnished by it would not avail it, as an erroneous conclusion of law, and urges that, because of that clause, Gray's negligence would not be imputed to it, and it could not, therefore, be held liable for it.
 
 
 10
 The Har Canaan and Maritime Overseas Corporation, its owner, argue vigorously that they were not responsible and cannot be held liable for the negligence of the pilot. Each of these argue that the conclusions on indemnity are wrong.
 
 
 11
 For the reasons hereafter stated, we are of the opinion: that the district judge was right throughout in his findings of fact and in his conclusions of law, that Gray was guilty of negligence in causing the anchor to be dropped upon the pipe line, and that, as a result of his negligence, he and the other respondents found liable are liable to the pipe line owners for the damage done them; and that the right of exoneration, action over, or indemnity is as he concluded it to be.
 
 
 12
 Taking up first the primary question of whether the findings of fact as to fault should be set aside, we think it sufficient to briefly say that the matter of fault or negligence is a disputed issue, and that, on the record as a whole, there was ample evidence for the district judge to find, as he did: that Gray and, therefore, the Har Canaan and its owners, and the G & H Towing Company knew that the pipe lines were laid in the slip under permit; that the burden was heavily upon them to show, in defense of their act in dropping the anchor, that they had made proper inquiries as to just where they were laid; and that due care had been used in dropping the anchor to avoid striking and injuring them in the course of the ship's movement; that, in short, Gray and the other respondents could not shift liability for the affirmative acts causing injury to the pipe line as a result of dropping the anchor on the lines by complaining here that, as matter of law, the pipe line owners were at fault in not marking more precisely the position of the lines, or that the findings that they were not are clearly erroneous.
 
 
 13
 In declaring these views, we are not holding that the district judge could not have found the fault and responsibility as these contend he should have. We are holding, though, that it was entirely proper for the district judge to find, as he did, upon the whole facts, that the proximate cause of the injury sued for was the failure of Gray to use due care to find out just where the pipe lines were, and that, without soundings or otherwise taking adequate precautions to precisely locate the pipe lines, he dropped the anchor on them with damaging results.
 
 
 14
 With the highly important question of primary fault for the injury thus disposed of by our holding that the court's findings as to Gray's negligence are not clearly erroneous and must be approved, we turn to the other questions raised by the several appellants.
 
 
 15
 The first of these is the complaint of all the appellants, including Gray, that the district judge erred in refusing to give effect to the pilotage clause[1] in the towing contract, providing in effect that neither Gray nor the Towing Company, his employer, would be liable for the negligence of Gray, its employee, indeed its port captain.
 
 
 16
 Of this, we think it sufficient to say that we agree: with the district judge's conclusion that the libellants, strangers to the contract, cannot, of course, be held bound, or in any way affected, by its terms; and also with his conclusions with respect to actions over for exoneration or indemnity that appellants are bound and precluded by the decision and holding in Bisso v. Inland Waterways Corporation, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, that such a clause is invalid. In addition, we think it clear that respondents' reliance on Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311, will not at all do here, both because of the decision in the Bisso case, which, on full consideration, rejected the Dalzell case as authority for the position here taken, and because the Dalzell case dealt with pilotage in its real sense of service rendered by publicly licensed involuntary or compulsory pilots, and Gray in this case was not such a pilot. Though called a pilot, he was merely the person in direct command with respect to a dead ship towing operation who, as such, conducted the operation by coming on board. Look at it as one will, nothing more can be made of this case than that it is a mere case of a towing service furnished by G & H Towing Company and performed by its port captain who, though denominated "pilot", was merely the one in charge of a dead ship towing operation who conducted it by coming on board the dead ship, and the effort to limit the liability of the towing company for the acts of those furnished by it to conduct the towing maneuver must fail here, just as it failed in the Bisso case, and the judgment denying effect to the invoked clause of the contract must be affirmed.
 
 
 17
 We are also of the opinion that there is no merit whatever in Gray's claim that he is protected from liability for his own fault by the terms of the contract, even if it were otherwise regarded as valid. Neither is there any merit in the claim of Maritime Overseas Corporation and Har Canaan, that they are not liable for Gray's acts because, under the law governing pilotage, they could not be held liable for the pilot's negligence. We find nothing in the cases cited by them, nothing in the cases generally, which supports this claim. Indeed, we think the cases have settled the law to the contrary, even in a case of true involuntary or compulsory pilotage. Cf. Publicker Industries, Inc. v. Tugboat Neptune Company et al., 3 Cir., 171 F.2d 48; United States, as Owner of The S.S. Christopher Gale v. Chris Nielson, 349 U.S. 129, 75 S.Ct. 654, 99 L.Ed. 939. We are, therefore, of the clear opinion that the court's findings of fact as to fault in the injury to the pipe lines cannot be set aside as clearly erroneous; that his conclusions, that the respondents held liable were in fact and in law responsible to the libellants, are correct and may not be set aside; and that all questions as to actions over for exoneration and/or indemnity were correctly decided, and the decree is accordingly in all things Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "Whenever any pilot goes on board a vessel to assist her movement or handling, he becomes and continues to be solely the servant, agent and employee of said vessel, and her owners and/or charterers in respect of all acts done by him, or all omissions, and all orders given by him to any tugs engaged or to said vessel, or otherwise, in the movement or handling of said vessel, or in connection with any decisions made by said pilot as to the manner or method of handling said vessel, and none of the tugs or their owners, agents, masters, servants, employees or charterers shall be responsible or liable for any act or omission of said pilot, or for any claims or damages caused by or resulting for (sic) any act, omission or order of said pilot."