438 F.2d 798
 BETHLEHEM STEEL CORPORATION, Plaintiff-Appellee,
v.
Captain Elmer S. YATES, Defendant-Appellant.
No. 30550 Summary Calendar.*
*Rule 18, 5 Cir.; See Isbell Enterprises, Inc
v.
Citizens Casualty Company of New York et al., 5 Cir. 1970,
431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Feb. 8, 1971.
 
 James O. Davis, Jr., William E. Henson, Jr., Tampa, Fla., Edward R. Downing, Miami, Fla., for defendant-appellant.
 Brendan P. O'Sullivan, Tampa, Fla., for plaintiff-appellee; Fowler, White,Before GEWIN, GOLDBERG, and DYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This suit in admiralty was brought by the appellee Bethlehem Steel Corporation to recover damages resulting from the allegedly negligent operation of its vessel 'SS BETHFLOR' and breach of warranty of workmanlike service by Captain Elmer S. Yates, a Tampa Bay Harbor Pilot. In a trial limited to the question of liability, the district court found that appellant Yates was responsible for the collision of the 'BETHFLOR' with the Florida Portland Cement dock in Tampa 'because he (Captain Yates) negligently failed to exercise the degree of care required of a harbor pilot in such circumstances, proximately causing the collision.' Appellant appeals from that determination and argues that as a matter of law the proximate cause of the collision was not his negligence but was instead the failure of the 'BETHFLOR' to respond to his orders. Finding the district court's opinion supported by the evidence and not 'clearly erroneous,' Fed.R.Civ.P. 52; Tidewater Marine Activities, Inc. v. American Towing Co., Inc., 5 Cir. 1970, 437 F.2d 124; Gray v. Johansson, 5 Cir. 1961, 287 F.2d 852, cert. denied, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36; City of Long Beach v. American President Lines, 9 Cir. 1955, 223 F.2d 853; see McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, we append it herein and adopt it as the opinion of this court.
 
 
 2
 The judgment is affirmed.
 
 APPENDIX
 
 3
 United States District Court Middle District of Florida Tampa Division
 
 Bethlehem Steel Corporation versus
 No. 68-345 Civ-T
 Captain Elmer S. Yates
 FINDINGS OF FACT AND CONCLUSIONS OF LAW
 
 4
 The Court, having considered the pleadings, the testimony of the witnesses, the other evidence admitted at the trial, and being otherwise advised in the premises, makes these:
 
 FINDINGS OF FACT
 
 5
 1. Plaintiff Bethlehem Steel Corporation was at all relevant times the owner and operator of the SS BETHFLOR.
 
 
 6
 2. Defendant Captain Elmer S. Yates, a resident of Hillsborough County, Florida, served as harbor pilot on board the SS BETHFLOR on departing Tampa on the afternoon of January 14, 1968; Captain Yates holds an unlimited master's license and has been a Tampa Bay Harbor Pilot since 1957.
 
 
 7
 3. The SS BETHFLOR is a seagoing vessel, 583 feet in length, 83 feet in breadth, with thirteen thousand shaft horsepower; she has a right handed screw and backs to post; at the time defendant boarded her on the afternoon of January 14, 1968, at Tampa her draft was 19 feet, 2 inches forward and 24 feet 4 inches aft.
 
 
 8
 4. The SS BETHFLOR was docked portside to Southport Terminal Pier No. 2 prior to departing Tampa on the afternoon of January 14, 1968.
 
 
 9
 5. Adjacent to the Southport Terminal Pier No. 2 is the Ybor turning basin, one of the larger maneuvering areas in the inner harbor of Tampa; this turning basin is in the shape of a triangle of about 1600 feet at its longest legs and inscribes a circle of about 900 feet in the center; there are no obstructions or geographical features in that part of Tampa harbor preventing a ship from getting well out into the turning basin when leaving Southport Terminal Pier No. 2 and there is deep water all the way across the basin.
 
 
 10
 6. At all relevant times up to and including the time of the collision on the afternoon of January 14, 1968, the SS BETHFLOR was properly and competently manned, properly supplied and equipped; all her machinery was in good repair and she was in seaworthy condition.
 
 
 11
 7. At all relevant times there was a northeast wind of Force 2 to 3, or approximately 4 to 10 knots, tending to hold the SS BETHFLOR off Southport Terminal Pier No. 2 and away from her port side of Sparkman Channel, down which channel the SS BETHFLOR proceeded in a generally southerly direction after leaving her berth that afternoon prior to the collision.
 
 
 12
 8. Sparkman Channel in Tampa Harbor, down which the SS BETHFLOR was proceeding at the time of the collision, is 400 feet wide and 34 feet deep. The Sparkman Channel Course, in departing Tampa, is a more or less straight line for a vessel undocking which has been moored portside to at Southport, Terminal Pier No. 2.
 
 
 13
 9. Captain Elmer S. Yates was familiar with the handling of the SS BETHEFLOR, having undocked that vessel from Southport Terminal Pier No. 2 about 9 times generally without tugboats assisting, prior to January 14, 1968.
 
 
 14
 10. The SS BETHFLOR always employed a pilot while entering or leaving Tampa Harbor; on leaving Tampa when berthed portside to at Southport Terminal Pier No. 2, her usual berth and manner of berthing, she customarily did not use tugboats unless weather conditions required.
 
 
 15
 11. Up to January 14, 1968, the SS BETHFLOR has called at Tampa on an average of 18 times per year over a 10 year period, regularly docking portside to at Southport Terminal Pier No. 2. She has used tugboats to assist her in undocking, when moored portside to, on only 2 or 3 occasions over this 10 year period.
 
 
 16
 12. From the time the SS BETHFLOR left Southport Terminal Pier No. 2 in Tampa on the afternoon of January 14, 1968, to the time of the collision there existed good visibility and fair weather, and the tide in the area involved was negligible.
 
 
 17
 13. At the time the SS BETHFLOR got underway from Southport Terminal Pier No. 2 on the afternoon of January 14, 1968, there were no vessels moored nearby nor maneuvering in the harbor nearby that would interfere with the maneuvering of the SS BETHFLOR.
 
 
 18
 14. From the time Captain Elmer S. Yates boarded the SS BETHFLOR on the afternoon of January 14, 1968, up until the time of the collision, Captain Yates handled the maneuvering and navigation of the ship, issuing all line handling, helm orders and engine orders.
 
 
 19
 15. In undocking the SS BETHFLOR from Southport Terminal Pier No. 2 on the afternoon of January 14, 1968, a single forward spring line (a wire) was held on the dock and all other vessel lines were taken in. Dead slow ahead engine speed was ordered with a hard left rudder to swing the bow in to the pier and 'spring' the stern out into the channel; the spring line was then released and the ship given half astern speed with the rudder placed midships; the engines were placed on astern speed to move the ship sternfirst away from the dock and out toward midstream; when Captain Elmer S. Yates determined the ship was properly positioned in the channel the rudder was shifted to hard right and half ahead engine speed given. At that point, the stem of the ship was approximately one hundred feet off of the dock. The stern was 250-300 feet off the dock.
 
 
 20
 16. In undocking from the Southport Terminal Pier No. 2 on the afternoon of January 14, 1968, the SS BETHFLOR's stern was not 'sprung' as far out into the channel and, more importantly, the vessel was not backed as great a distance out into the channel as it usually was in performing this operation, with the result that as the SS BETHFLOR came ahead after backing away from the pier the port side of the vessel came within ten feet of the pier and the SS BETHFLOR nearly collided with the same Southport Terminal Pier from which it had just undocked.
 
 
 21
 17. As the SS BETHFLOR proceeded in a southerly direction down Sparkman Channel after undocking on the afternoon of January 14, 1968, it failed to break away from the adjacent dock and channel bank area on its port side and was continually in danger of collision until the SS BETHFLOR collided with the Florida Portland Cement Dock that afternoon.
 
 
 22
 18. At approximately 1616 hours on January 14, 1968, the SS BETHFLOR collided with the Florida Portland Cement Dock, Tampa, Florida, proximately causing damage to the dock and to the SS BETHFLOR.
 
 
 23
 19. At or immediately prior to the time of the vessel's collision with the dock, Captain Yates ordered the SS BETHFLOR's anchor dropped.
 
 
 24
 20. All engine speed orders given by Captain Elmer S. Yates and all helm orders given by Captain Elmer S. Yates on board the SS BETHFLOR on the afternoon of January 14, 1968, from the time of undocking up to the time of the collision were carried out by the ship's personnel to the satisfaction of Captain Elmer S. Yates and were carried out promptly.
 
 
 25
 21. From the time the SS BETHFLOR undocked from Southport Terminal Pier No. 2 on the afternoon of January 14, 1968, until the time of the collision she responded properly to the orders given by Captain Elmer S. Yates.
 
 
 26
 22. It was evident that the SS BETHFLOR was in difficulty as soon as the pilot, Captain Elmer S. Yates, ordered ahead engine speed after backing the vessel off the dock; at the time the captain had the option of stopping the ship and commencing the undocking maneuvers again without endangering the ship in any way but chose not to do so.
 
 
 27
 23. As the SS BETHFLOR moved ahead after backing away from Southport Terminal Pier No. 2 on the afternoon of January 14, 1968, she developed a bank suction which pilot Captain Elmer S. Yates was unable to break up to the time of the collision.
 
 
 28
 24. Bank suction is a condition well known and frequently experienced by ship handlers and pilots, usually occuring when a vessel gets too close to a bank, causing a suction on the vessel against the bank and causing the ship handler to lose all or some control over the vessel which tends to pull the vessel away from the rudder action and suck it into the bank or wall or dock; there are recognized procedures for dealing with bank suction and for successfully controlling it.
 
 
 29
 25. During its approximate 180 calls at Tampa over a 10 year period prior to January 14, 1968, the SS BETHFLOR had never been endangered by bank suction nor collided with a dock
 
 
 30
 26. The SS BETHFLOR was first drydocked for underwater inspection following the collision of January 14, 1968, in August of 1968 in Baltimore, Maryland.
 
 
 31
 27. This SS BETHFLOR was not involved in any collisions after the dock collision of January 14, 1968, until she was drydocked in Baltimore in August of 1968.
 
 
 32
 28. Captain Alf. J. Dahl, a seaman of 52 years experience, retired commodore master of the Mobile Oil Company and who had piloted a vessel of comparable size to the SS BETHFLOR in Tampa Harbor for between 200 and 300 voyages, rendering an expert opinion that the proximate cause of the SS BETHFLOR's collision with the Florida Portland Cement dock on the afternoon of January 14, 1968, was pilot Captain Elmer S. Yates' failure to have the SS BETHFLOR under proper control resulting from the pilot's negligence in failing to get the SS BETHFLOR far enough away from the pier before proceeding ahead down channel; and the Court accepts this opinion.
 
 
 33
 29. Captain William T. Corfield, a seaman of about 22 years seagoing experience, holder of an unlimited master's license, who later served as a Coast Guard officer, including service as Captain of the Port of Tampa, for 24 years, rendered an expert opinion that the proximate cause of the SS BETHFLOR's collision with the Florida Portland Cement dock on the afternoon of January 14, 1968, was pilot Captain Elmer S. Yates' failure to initially properly position the SS BETHFLOR off the dock resulting from Captain Yates' failure to move the SS BETHFLOR far enough astern and Captain Yates, failure to get the stern of the vessel far enough away from the dock before proceeding ahead. In Captain Corfield's expert opinion the SS BETHFLOR should have been at least two full ship beams distant from the dock to prevent bank suction; Captain Corfield referred to Knights Modern Seamanship, page 214 (p. 517 of 10th Ed. Rev.) on cross examination to substantiate the two beam distance. The Court also accepts Captain Corfield's expert opinion, and the information found in Knight's Modern Seamanship on ship handling.
 
 
 34
 30. Captain Elmer S. Yates agreed that bank suction did occur prior to the collision with the dock on January 14, 1968.
 
 
 35
 31. Captain Elmer S. Yates failed to use that degree of care which a reasonably skillful pilot would use in handling the maneuvering and navigation of the SS BETHFLOR on the afternoon of January 14, 1968.
 
 
 36
 32. Captain Elmer S. Yates, in agreeing to serve as Harbor Pilot on the SS BETHFLOR on the afternoon of January 14, 1968, warranted to plaintiff that he would perform his services as pilot in a workmanlike manner but breached this warranty by the manner in which he handled the SS BETHFLOR on that occasion.
 
 CONCLUSIONS OF LAW
 The Court, therefore, concludes:
 
 37
 1. This Court has jurisdiction of the subject matter and of the parties.
 
 
 38
 2. Legal liability for the collision of the SS BETHFLOR with the Florida Portland Cement dock in Tampa on the afternoon of January 14, 1968, rests upon the defendant pilot, Captain Elmer S. Yates, because he negligently failed to exercise the degree of care required of a harbor pilot in such circumstances, proximately causing the collision.
 
 
 39
 3. By serving as Harbor Pilot on the SS BETHFLOR on the afternoon of January 14, 1968, Captain Elmer S. Yates impliedly warranted that he would perform his services in a workmanlike manner but breached this warranty in performing his services proximately causing the collision.
 
 
 40
 4. No unseaworthiness of the SS BETHFLOR not negligence of her officers or crew contributed to the collision.
 
 
 41
 5. As a proximate result of the collision both the SS BETHFLOR and the Florida Portland Cement dock were damaged.
 
 
 42
 6. Plaintiff is entitled to recover from defendant the damages it sustained as a proximate result of the collision, said damages to be determined at separate trial, including damage to the SS BETHFLOR and damages to the Florida Portland Cement dock resulting from the collision, and is entitled to be indemnified by defendant for costs and attorney fees incurred in defending claims of the dock owner for dock damage, together with costs of this action.
 
 
 43
 DONE and ORDERED at Tampa, Florida, this 19th day of March, 1970.
 
 
 44
 (s) Joseph P. Lieb UNITED STATES DISTRICT JUDGE