Louis Paul NELSON, Plaintiff-Appellee,

v.

JACKSONVILLE SHIPYARDS, INC., Defendant-Third-Party Plaintiff-Appellant,

v.

BABCOCK & WILCOX COMPANY, Third-Party Defendant-Appellee.

No. 30753

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 15, 1971.

Rehearing Denied April 13, 1971.

* ■ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F. 2d 409, Part I.

John E. Houser, Jacksonville, Fla., for Jacksonville Shipyards, Inc.

Nathan Bedell, E. Earle Zehmer, for plaintiff-appellee; Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., of counsel.

George Stellies, Jr., Marks, Gray, Conroy & Gibbs, Jacksonville, Fla., for Babcock & Wilcox Company.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

PER CURIAM:

Jacksonville Shipyards, Inc., appeals from a judgment of the district court entered in favor of Louis Paul Nelson and Babcock & Wilcox Company. We affirm.

Nelson, an employee of Babcock & Wilcox, was injured during a hydrostatic test of a boiler on board a power barge that Jacksonville Shipyards had undertaken to repair. A "blind nipple"[1] blew out and struck him in the leg.[2] In Nelson's action against

---

1. The boiler had a superheater to elevate the water temperature. This is a large round cylinder with tubes out of one side and opposite each tube it has an opening for a workman to gain access. These openings are closed by cupcaps or blind nipples. A cupcap is 4 inches in diameter. It is shaped like a half sphere with a shoulder on the outer edge. It is inserted through the blind nipple opening. The blind nipple is 4½ inches in diameter and is like a 6-inch length of pipe with a round end. The blind nipple is the last thing put in place. It is inserted with a slight lip projecting to the outside. The blind nipple is then "conventionally expanded" or "straight rolled" so that the blind nipple presses against the side of the opening.

2. The blind nipples were not being tested at that time, as Richard Campbell, the leading boilermaker for Jacksonville Shipyards who was in charge of and conducted this preliminary test, made quite clear: "We weren't interested in the cup caps or the blind nipples, we were interested in the tubes I had installed. We wanted

Jacksonville Shipyards, the district court found that the Shipyards had been negligent in installing the blind nipple on the boiler and that this negligence was the proximate cause of Nelson's injuries. The court further found that Nelson himself had not been guilty of any contributory negligence. In Jacksonville Shipyard's third party action against Babcock & Wilcox, the court found that Babcock & Wilcox had neither acted negligently nor breached any express or implied obligation owing to Jacksonville Shipyards. On these findings, the court concluded that Nelson was entitled to a judgment in the amount of $90,000 against Jacksonville Shipyards and that the Shipyards had no right of indemnity against Babcock & Wilcox.

On appeal Jacksonville Shipyards makes four contentions: (1) Nelson was guilty of contributory negligence, which was the proximate cause of his injuries; (2) Babcock & Wilcox breached its warranty of workmanlike performance under the general maritime law and thus Jacksonville Shipyards is entitled to indemnity from that company; (3) Babcock & Wilcox breached its implied obligation under Florida law to perform its contract properly and thus should be required to indemnify the Shipyards; and (4) the district court improperly excluded from evidence a 1956 contract between Babcock & Wilcox and the City of Jacksonville. We have carefully considered each of these points and conclude that they are without merit.

■ The district court found as facts that Nelson had not been contributorily negligent, that no other employee of Babcock & Wilcox had been negligent, and that Babcock & Wilcox had breached no implied or contractual obligation owing to Jacksonville Shipyards. The resolution of disputed factual issues is of course a matter for the trier of fact, and we cannot set aside his findings of fact unless they are clearly erroneous. Rule 52, F.R.Civ.P.; *Bethlehem Steel Corp. v. Yates*, 5 Cir. 1971, 438 F.2d 798; *Tidewater Marine Activities v. American Towing Co.*, 5 Cir. 1970, 437 F.2d 124 [No. 29,835, December 30, 1970]; *Drake v. E. I. DuPont de Nemours & Co.*, 5 Cir. 1970, 432 F.2d 276, 279; *see McAllister v. United States*, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. There is ample evidence in the record to sustain the district court's findings of fact; in these circumstances we cannot say that those findings are clearly erroneous. *Cf.* *Allison v. Cosmos Steamship Corp.*, 9 Cir. 1970, 433 F.2d 840.

Although the resolution of these factual issues effectively disposes of the case, we have serious doubts whether under the *Ryan*[3] doctrine an actively negligent independent contractor can ever recover indemnity from another independent contractor. *Cf.* *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; *Grigsby v. Coastal Marine Serv. of Texas, Inc.*, 5 Cir. 1969, 412 F.2d 1011, 1039; *General Dynamics Corp. v. Adams*, 5 Cir. 1965, 340 F.2d 271.

■ Finally, the district court did not err in excluding from evidence the 1956 contract between Babcock & Wilcox and the City of Jacksonville. Jacksonville Shipyards contends that the 1956 contract is relevant to the scope of Babcock & Wilcox's obligation to Jacksonville Shipyards in 1967. Citing *Rogers v. United States Lines Co.*, 3 Cir. 1962, 303 F.2d 295, the Shipyards contends that

---

to see if they were going to leak. * * * " Campbell further testified that Nelson did not get down and feel the nipples but "He more or less relied upon my word" and that, with respect to the rolling or expansion of the blind nipples, "everybody figured I had enough knowledge and experience" to use the proper rolls and "relied on my ability".

3. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; *see also* Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

prior dealings between the parties to a contract are admissible as bearing upon the scope of the present undertaking. The parties to the 1956 contract, however, and the parties to the contract here in dispute are not the same. Moreover, the probative value of the 1956 contract is in serious doubt in light of its remoteness in time from the instant undertaking.

Therefore, the judgment of the district court is affirmed.