314 U.S. 104 (1941)
COMMERCIAL MOLASSES CORP.
v.
NEW YORK TANK BARGE CORP.
No. 14.
Supreme Court of United States.
Reargued October 16, 1941.
Decided November 17, 1941.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.
*105 Mr. T. Catesby Jones, with whom Messrs. Leonard J. Matteson and Ezra G. Benedict Fox were on the brief, for petitioner.
Mr. Robert S. Erskine, with whom Messrs. Cletus Keating, L. de Grove Potter, and Richard Sullivan were on the brief, for respondent.
MR. CHIEF JUSTICE STONE delivered the opinion of the Court.
This is a proceeding in admiralty originating in the District Court upon a petition by respondent, as chartered owner of the tank barge "T.N. No. 73," for limitation of liability for damage to petitioner's shipment of molasses resulting from the sinking of the barge in New York harbor.
Petitioner, the sole claimant in the limitation proceeding, filed, in behalf of the insurer, its claim for loss of the molasses on the barge, which sank on Oct. 23, 1937, while taking on the shipment from the S.S. "Althelsultan." The barge sank in smooth water, without contact with any other vessel or external object to account for the sinking. By the contract of affreightment with petitioner's predecessor in interest, extended to cover the year 1937, respondent undertook to transport the molasses by barges in New York harbor from vessels or tidewater refineries to the shipper's customers; and agreed that the barges are "tight, staunch, strong and in every way fitted for the carriage of molasses within the limits above mentioned and [respondent] will maintain the barges in such condition during the life of this contract." The contract also contained *106 an undertaking on the part of the shipper of the molasses to effect insurance on cargoes for the account of respondent, the breach of which, it is contended, operated to relieve respondent from liability for any unseaworthiness of the barge.
The "T.N. No. 73" was a steel tank barge with four cargo tanks, two forward and two aft, separated by bulkheads, one extending fore and aft and the other athwartship. It had a rake fore and aft beginning 23 inches below the deck, affording space for fore and aft peak tanks. The customary method of stowing the barge was to pump the molasses into the forward tanks until the barge had a specified freeboard, then into the stern tanks until the stern had another specified freeboard, then back into the forward tanks until the barge was trimmed fore and aft.
In the case of the present shipment, the customary procedure was followed and the molasses was first pumped into the forward and then into the after tanks at a rate of from 3 to 3 1/2 tons a minute. When the stern had approximately the desired freeboard the mate of the barge went forward to open the valves of the discharge pipes connecting with the forward tanks so as to fill them sufficiently to trim the barge fore and aft. On his way he stopped for a short time, the length of which was not precisely fixed, to carry on a conversation with some of the men on the vessel lying alongside. When he reached the valves for the forward tanks and before the valves for the after tanks had been closed, the barge sank by the stern. Only a small part of the molasses was saved, and the value of that lost largely exceeded the value of the barge after salvage operations.
Respondent attributed the sinking to overloading of the after tanks resulting from the mate's delay in shifting the flow of the molasses from the stern to the forward tanks. If, as alleged, over-filling of the stern tanks caused the loss without the privity or knowledge of respondent, it could *107 limit liability. R.S. § 4283, 46 U.S.C. § 183; La Bourgogne, 210 U.S. 95, 122; The George W. Pratt, 76 F.2d 902. But it was unnecessary to decide any question of limiting liability unless petitioner, the sole claimant, succeeded in establishing its claim.
On the issues thus presented the District Court heard a great deal of testimony by witnesses who testified to all the circumstances attending the loading and sinking of the barge, and by experts as to its theoretical load capacity and the probable disposition of its load at the time the barge sank. There was also much evidence bearing on the seaworthiness of the vessel. This included the testimony of a representative of the cargo interests who had inspected the barge just before she began to receive the molasses and had found the tanks dry and clean, and who admitted he had found no evidence of leakage. There was also testimony by a diver who had examined the barge while she was on the bottom, and of others who had examined her condition after she had been raised and placed in dry dock.
After a careful review of all the evidence, the trial judge found that it was not sufficient to establish the fact that the sinking was caused by overloading the after tanks. He also found as a fact that upon all the evidence "the cause of the accident has been left in doubt." From all this he concluded that respondent was chargeable upon its warranty of seaworthiness by reason of the "presumption" of unseaworthiness arising from the unexplained sinking of the barge, which would deprive the owner of the right to limit liability. But, as he thought the insurance clause in the contract of affreightment required petitioner to effect cargo insurance for account of respondent, which it had failed to do, he dismissed petitioner's claim. 1939 A.M.C. 673.
The Court of Appeals affirmed, 114 F.2d 248, but for a different reason than that assigned by the trial judge for *108 his decision. It held that the burden was on petitioner to prove that respondent had furnished an unseaworthy barge. The court sustained the trial court's finding, which it interpreted as meaning "that the evidence as to whether or not the barge sank because of unseaworthiness was so evenly matched that the judge could come to no conclusion upon the issue." But it held that the "presumption of unseaworthiness," which would arise from the evidence of the sinking of the barge in smooth water without any other apparent or probable cause, did not survive the further proof which left in doubt the issue of the cause of the loss. The court accordingly held that petitioner had not sustained its burden. It thus became unnecessary to consider what burden would rest on the barge owner if he were seeking to limit liability on an admittedly valid claim. We granted certiorari, 311 U.S. 643, to resolve an alleged conflict of the decision below with those of other circuit courts of appeals. Pacific Coast S.S. Co. v. Bancroft-Whitney Co., 94 F. 180; The John Twohy, 279 F. 343; Loveland Co. v. Bethlehem Steel Co., 33 F.2d 655; Gardner v. Dantzler Lumber & Export Co., 98 F.2d 478; cf. The Edwin I. Morrison, 153 U.S. 199, and because of the importance in the maritime law of the principle involved.
With respect to the burden of proof, this case is to be distinguished from those in which the burden of proving seaworthiness rests upon the vessel when it is a common carrier or has assumed the obligation of a common carrier. The present contract of affreightment was for private carriage in New York harbor: The Fri, 154 F. 333; The G.R. Crowe, 294 F. 506; The Wildenfels, 161 F. 864; The C.R. Sheffer, 249 F. 600; The Lyra, 255 F. 667; The Nordhvalen, 6 F.2d 883, and thus gave to respondent the status of a bailee for hire of the molasses. Southern Ry. Co. v. Prescott, 240 U.S. 632, 640; Kohlsaat v. Parkersburg & M. Sand Co., 266 F. 283; Alpine *109 Forwarding Co. v. Pennsylvania Railroad Co., 60 F.2d 734; Gerhard & Hey, Inc. v. Cattaraugus T. Co., 241 N.Y. 413, 150 N.E. 500. Cf. The Nordhvalen, supra, 887. Hence, we are not concerned with the rule that one who has assumed the obligation of a common carrier can relieve himself of liability for failing to carry safely only by showing that the cause of loss was within one of the narrowly restricted exceptions which the law itself annexes to his undertaking, or for which it permits him to stipulate. The burden rests upon him to show that the loss was due to an excepted cause and that he has exercised due care to avoid it, not in consequence of his being an ordinary "bailee" but because he is a special type of bailee who has assumed the obligation of an insurer. Schnell v. The Vallescura, 293 U.S. 296, 304, and cases cited. See Coggs v. Bernard, 2 Ld. Raym. 909, 918.
For this reason, the shipowner, in order to bring himself within a permitted exception to the obligation to carry safely, whether imposed by statute or because he is a common carrier or because he has assumed it by contract, must show that the loss was due to an excepted cause and not to breach of his duty to furnish a seaworthy vessel. The Edwin I. Morrison, supra, 211; The Majestic, 166 U.S. 375; Schnell v. The Vallescura, supra; The Beeche Dene, 55 F. 525. Cf. 39 Stat. 539, 49 U.S.C. § 88; Uniform Bill of Lading Act, § 12. See IX Wigmore on Evidence (3rd ed.) § 2508 and cases cited. And in that case, since the burden is on the shipowner, he does not sustain it, and the shipper must prevail if, upon the whole evidence, it remains doubtful whether the loss is within the exception. The Folmina, 212 U.S. 354, 363; Schnell v. The Vallescura, supra, 306, 307. A similar rule is applied under the Harter Act, which gives to the owner an excuse for unseaworthiness, if he has exercised due care to make his vessel seaworthy, for there the burden rests upon him to show that *110 he has exercised such care. The Wildcroft, 201 U.S. 378; The Southwark, 191 U.S. 1, 12; May v. Hamburg-Amerikanische Gesellschaft, 290 U.S. 333, 346.
But, as the court below held, the bailee of goods who has not assumed a common carrier's obligation is not an insurer. His undertaking is to exercise due care in the protection of the goods committed to his care and to perform the obligation of his contract including the warranty of seaworthiness when he is a shipowner. In such a case the burden of proving the breach of duty or obligation rests upon him who must assert it as the ground of the recovery which he seeks, Southern Ry. Co. v. Prescott, supra; Kohlsaat v. Parkersburg & M. Sand Co., supra; The Transit, 250 F. 71, 72, 75; The Nordhvalen, supra; Delaware Dredging Co. v. Graham, 43 F.2d 852, 854; Alpine Forwarding Co. v. Pennsylvania R. Co., supra, 736; Gerhard & Hey, Inc. v. Cattaraugus & Co., supra; Story on Bailments (8th ed.) §§ 501, 504, 410, 410a; Wigmore, op. cit., supra, § 2508 and cased cited, as it did upon petitioner here when it alleged the breach of warranty as the basis of its claim. Petitioner apparently does not challenge the distinction which for more than two centuries, since Coggs v. Bernard, supra, has been taken between common carriers and those whom the law leaves free to regulate their mutual rights and obligations by private arrangements suited to the special circumstances of cases like the present. Nor do we see any adequate grounds for departing from it now or for drawing distinctions between a private bailment of merchandise on a barge in New York harbor and of goods stored in a private warehouse on the docks. Neither bailee is an insurer of delivery of the merchandise; both are free to stipulate for such insurance or for any lesser obligation, in which case the bailor cannot recover without proof of its breach.
The burden of proof in a litigation, wherever the law has placed it, does not shift with the evidence, and in determining *111 whether petitioner has sustained the burden the question often is, as in this case, what inferences of fact he may summon to his aid. In answering it in this, as in others where breach of duty is the issue, the law takes into account the relative opportunity of the parties to know the fact in issue and to account for the loss which it is alleged is due to the breach. Since the bailee in general is in a better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him. The Northern Belle, 9 Wall. 526, 529; Gulf, C. & S.F. Ry. Co. v. Ellis, 54 F. 481, 483; Pacific Coast S.S. Co. v. Bancroft-Whitney Co., 94 F. 180; The Nordhvalen, supra, 886. If the bailee fails, it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely. Southern Ry. Co. v. Prescott, supra; cf. The America, 174 F. 724.
Whether we label this permissible inference with the equivocal term "presumption" or consider merely that it is a rational inference from the facts proven, it does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start. Southern Ry. Co. v. Prescott, supra; Kohlsaat v. Parkersburg & M. Sand Co., supra; Tomkins Cove Stone Co. v. Bleakley Co., 40 F.2d 249; Pickup v. Thames Insurance Co., 3 Q.B.D. 594. Cf. Del Vecchio v. Bowers, 296 U.S. 280; Wigmore, op. cit., supra, §§ 2485, 2490, 2491, and cases cited.
*112 Proof of the breach of warranty of seaworthiness stands on no different footing. The trier of fact may in many situations infer the breach from the unexplained circumstance that the vessel, whether a common or private carrier, sank in smooth water. See The Edwin I. Morrison, supra; Work v. Leathers, 97 U.S. 379, 380; The Harper No. 145, 42 F.2d 161; The Jungshoved, 290 F. 733; Barnewall v. Church, 1 Caines 217, 234; Walsh v. Washington Marine Insurance Co., 32 N.Y. 427, 436; Zillah Transportation Co. v. Aetna Ins. Co., 175 Minn. 398, 221 N.W. 529; and cases cited below, 114 F.2d 248, 251; Scrutton on Charter Parties and Bills of Lading (14th ed.) 105. Whether in such circumstances the vessel has the status of a private bailee is of significance only in determining whose is the burden of persuasion. Wherever the burden rests, he who undertakes to carry it must do more than create a doubt which the trier of fact is unable to resolve. The Edwin I. Morrison, supra, 212; The Folmina, supra, 363; Schnell v. The Vallescura, supra. The English courts, after some obscurity of treatment, see Watson v. Clark, 1 Dow 336, have reached the same conclusion. Pickup v. Thames Insurance Co., 3 Q.B.D. 594; Ajum Goolam Hossen & Co. v. Union Marine Insurance Co., [1901] A.C. 362, 366; Lindsay v. Klein, [1911] A.C. 194, 203, 205; see Constantine S.S. Line v. Imperial Smelting Corp., [1941] 2 All Eng. 165, 191-92.
Proof of the sinking of the barge aided petitioner, but did not relieve it from sustaining the burden of persuasion when all the evidence was in. This Court, in the case of private bailments, has given like effect to the rule that the unexplained failure of the bailee to return the bailed goods is prima facie evidence of his breach of duty, Southern Ry. Co. v. Prescott, supra, 640, and cases cited; see Chesapeake & Ohio Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 422; and the lower federal courts have applied, correctly we *113 think, the same rule with respect to proof of unseaworthiness by the shipper where the vessel has not assumed the obligation of a common carrier. Kohlsaat v. Parkersburg & M. Sand Co., supra, 285; Robert A. Munroe Co. v. Chesapeake Lighterage Co., 283 F. 526; The Nordhvalen, supra; Tomkins Cove Stone Co. v. Bleakley Co., supra; Delaware Dredging Co. v. Graham, supra, 854. This is but a particular application of the doctrine of res ipsa loquitur, which similarly is an aid to the plaintiff in sustaining the burden of proving breach of the duty of due care but does not avoid the requirement that upon the whole case he must prove the breach by the preponderance of evidence. Sweeney v. Erving, 228 U.S. 233.
The Edwin I. Morrison, 153 U.S. 199, calls for no different result. There this Court reversed the findings of the lower court on the ground that the explanation offered for damage to the cargo by seawater taken in through a defective bilge pump hole, was only a conjecture supported by no direct testimony and was not sufficient to sustain the burden of the shipowner to prove that the vessel was seaworthy, saying (p. 212): "If the determination of this question is left in doubt, that doubt must be resolved against" the shipowner. See The Dunbritton, 73 F. 352, 358; The Alvena, 74 F. 252, 255. The court below had found that the bill of lading signed by the master-owner undertook to deliver the shipment in "good order and condition," the "dangers of the sea excepted." No exception was taken to this finding, and in this Court the shipper's contention that such was the contract was not challenged by the owner. The opinion must be taken as proceeding, as in The Folmina and Schnell v. The Vallescura, supra, on the ground that the case was one in which the obligation assumed was that of a common carrier on whom the burden rests of proving that the cargo loss is not due to unseaworthiness. *114 The expressions in the opinion, as to the burden of proof which the shipowner must carry in order to bring him within the exception of perils of the sea, have been cited, in the only instances when approved by this Court, as relating to the burden of proof on those who have assumed the obligations of common carriers. See The Majestic, supra, 386; The Folmina, supra, 363; Schnell v. The Vallescura, supra, 305.
Here petitioner relied on the inference to be drawn from the unexplained sinking of the barge to sustain its burden of proving unseaworthiness. But the evidence did not stop there. To rebut the inference, respondent came forward with evidence fully disclosing the circumstances attending the sinking. Inspection of the barge before the loading began and after she sank, and again after she was raised, failed to disclose any persuasive evidence of unseaworthiness. The method and circumstances of her loading at least tended to weaken the inference which might otherwise have been drawn that the sinking was due to unseaworthiness rather than fault in stowing the cargo. Upon an examination of all the evidence of which the sinking, without any proven specific cause, was a part, the two courts below have found that no inference as to the cause of sinking can be drawn. Petitioner has thus failed to sustain the burden resting on it.
Affirmed.
MR. JUSTICE BLACK, dissenting:
It has long been recognized that "courts of admiralty are not governed by the strict rules of the common law, but act upon enlarged principles of equity." O'Brien v. Miller, 168 U.S. 287, 297. Where, as here, the result of a case in admiralty is made to turn upon the distinction between a common and private carrier, one may well ask whether more respect has been paid to technical niceties of the common law than befits the admiralty *115 tradition. Cf. The Confiscation Cases, 20 Wall. 92, 105-106, 107. I do not deny that in many situations the distinction may be important nor that legislatures and courts may be compelled from time to time to resurvey the changing line of separation. But here, I am convinced, the distinction is irrelevant to a just disposition of the case before us.
In the opinion just announced, the burden of proving seaworthiness is tied up with a common carrier's obligations as an insurer. But in Schnell v. The Vallescura, 293 U.S. 296, although the defendant was a common carrier on whom it was held such a burden lies, no suggestion that the Court rested its result upon the peculiar obligation of the defendant as an insurer can be found in the opinion. And so far as appears from the briefs and arguments of counsel as well as the majority opinion here, it would seem that this Court has never before given the insurer's liability of common carriers as the reason for the heavy burden of proof they bear in admiralty cases of this type. On the contrary, the basis usually given for the rule is the one explicitly stated in Schnell v. The Vallescura, supra, at page 304:
"The reason for the rule is apparent. He is a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."
It is difficult to see any persuasive reason for concluding that the rule as thus explained is any less appropriately applied to private carriers than to common *116 carriers. In both cases the shipper normally has no representative on board the ship, the master and crew being employees of the carrier, with the result that the difficulties encountered by the shipper in seeking to find out how the loss occurred are equally great. See Carver, Carriage of Goods by Sea (8th ed.) 9.
I have found no language in the opinions of this Court, in cases holding the burden of proof of seaworthiness rests on a common carrier, that even suggests, not to say compels, the inference that a different result would have been reached if the carrier had been a private one. Hence, if the question of this case were one of original impression, I should see no obstacle to a holding that would give to the shipper here, who clearly had no easier access to evidence than did the shipper in the Vallescura case, the benefits of a similar allocation of the burden of proof.
But the question is not one of original impression. In The Edwin I. Morrison, 153 U.S. 199, this Court held that the burden was on a private carrier to prove seaworthiness in a controversy distinguishable in no significant respect from that now before us. The opinion of the Court here has suggested that the finding by the Circuit Court in the Morrison case that the bill of lading stated that the carrier would deliver the shipment "in good order and condition" amounted to a finding that the carrier had by contract assumed additional obligations, i.e., those of a common carrier. Hence, the Court sees in that decision nothing more than the reiteration of the proposition that a common carrier has the burden of proving seaworthiness and finds in it no indication of what the burden of a private carrier should be.
It may seriously be questioned whether the finding that the bill of lading contained the casual phrase just quoted can properly be interpreted as a finding of a contract to assume the peculiar liabilities (whatever they may have *117 been) of a common carrier. But even on the assumption that the Court's interpretation of the finding is correct, its interpretation of the basis of decision in the Morrison case seems clearly erroneous. Nowhere in that opinion is there the smallest suggestion that the carrier was regarded as having bargained itself into a position of special liability. If the Court had believed a distinction must be made between private and common carriers, I should suppose it would have been explicit in stating that this carrier, although a private carrier, had assumed the obligations of a common carrier by contract. I think it inconceivable that it would have left a fact of such significance to be deduced from an inconspicuous phrase in the findings of the Circuit Court set out in a footnote to the "Statement of the Case" seven pages before the opinion itself begins. The Edwin I. Morrison, supra, 203, n. 1.
In The Lottawanna, 21 Wall. 558, 571, Mr. Justice Bradley stated: "If . . . with the new lights that have been thrown upon the whole subject of maritime law and admiralty jurisdiction, a more rational view of the question demands an adverse ruling in order to preserve harmony and logical consistency in the general system, the court might, perhaps, if no evil consequences of a glaring character were likely to ensue, feel constrained to adopt it. But if no such necessity exists, we ought not to permit any consideration of mere expediency or love of scientific completeness, to draw us into a substantial change of the received law." In the "received law" of this Court, at least since 1894, when the Morrison case was decided, no distinction has been drawn between private and common carriers with reference to the burden of proving seaworthiness. If such a distinction had existed, the "new lights" shed by the awareness of ever increasing complexity in modern shipping, a complexity equally incomprehensible to the shipper whether he deals with a private or common carrier, could, perhaps not without propriety, have been taken by this Court as a reason for erasing it. But the contrary procedure, *118 of establishing a distinction which neither was present in our received law nor is demanded "to preserve harmony and logical consistency," seems wholly unjustifiable.
Accordingly, it is my opinion that the judgment below should be reversed.
MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY, and MR. JUSTICE BYRNES concur in this opinion.