**SAVANNAH LIGHTERAGE & TRANSFER CO. v. ATLANTIC CREOSOTING CO., Inc.**

No. 11698.

Circuit Court of Appeals, Fifth Circuit.

Nov. 4, 1946.

Anton P. Wright and Luther H. Zeigler, of Savannah, Ga., for appellant.

A. R. Lawton, Jr., of Savannah, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On August 7, 1943, Atlantic Creosoting Company, by demise charter, secured a lighter from Savannah Lighterage & Transfer Company for the purpose of delivering cross-ties from its docks to the S.S. Florida within the Savannah harbor. The lighter was delivered to Atlantic's docks, was loaded with 2,796 cross-ties, and about 7 o'clock in the evening was towed to the S.S. Florida and tied alongside for the night. During the night, between 2 and 3 o'clock the following morning, the lighter submerged on one end and the cargo of cross-ties was dumped into the river. Many of the cross-ties were lost and others were recovered at Atlantic's expense.

At all times while Atlantic had the lighter, the water in the harbor was calm and the weather was clear. The libelant rested its case on the proposition that the "unexplained sinking in clear weather" raised the presumption that the lighter was unseaworthy. The trial judge found that the presumption had been raised by libelant and had not been rebutted by the owner, and entered judgment for the libelant for the damages sustained.

It is true that ordinarily an unexplained sinking of a vessel in calm water in clear weather raises a presumption of unseaworthiness which casts upon an owner the burden of showing seaworthiness at the time of delivery. The Doyle, 3 Cir., 105 F.2d 113; The Transit, 3 Cir., 250 F. 71; Commercial Corp. v. New York Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. The record evidence here, however, does not simply show an "unexplained sinking" in calm water in clear weather. The principal witness, Mr. C. J. Theus, a marine surveyor, testified that the lighter submerged because it had a hole in its side. "One plank on one side of the lighter ap-

---

[11] Ibid, 168 S.W.2d 970.

parently had been shoved in. The plank I think was about eight or ten feet from the bow and was just a little below the water line * * *. The lighter simply had a hole in it and filled up with water." The hole was a large one, approximately four inches wide and from one and one-half to two and one-half feet long, with a piece of the plank completely gone. With the lighter loaded, the hole was below the water line.

Nothing in the record shows how the hole was made in the side of the lighter, and the evidence is meager and not adequately developed as to the condition of the timbers of the lighter where the hole appeared. The testimony of Mr. Theus on this point is: "Q. Did you examine it to see whether or not it was a fresh break? A. That would be hard to tell, but the wood was fairly hard through. It was in serviceable condition, not good but serviceable." Mr. S. C. Bevill, the lighterage company's repair foreman, testified as to the size of the hole and the condition of the caulking, but was not questioned as to the condition of the timbers.

The gaping hole in the side of the lighter was so large that it would have taken in water and sunk shortly after loading had the hole been there when the lighter was delivered to Atlantic. Apparently the hole was made after the loading and some time during the night while the lighter was tied alongside the S.S. Florida. How the hole was made is a matter of speculation on this record, but evidently something struck the lighter or the plank caved in shortly before the sinking. There should have been a full development of the evidence to show whether the timber was in fact decayed, weak, or sound. After the sinking, the lighter was removed to a marine railway and repaired. Certainly, the owner and those persons who repaired the lighter could give testimony as to the condition of the planks where the hole was found.

The judgment is reversed and the cause remanded with direction to reopen the case for introduction of further evidence as to how the hole was made and the condition of the timber at that point, and for consideration of the cause de novo.