OWENS–ILLINOIS GLASS COMPANY,
Plaintiff,

v.

AMERICAN COASTAL LINES, INC.,
Defendant.

AMERICAN COASTAL LINES, INC.,
Defendant and Third-Party
Plaintiff,

v.

GLENS FALLS INSURANCE CO. et al.,
Third-Party Defendants.

OWENS–ILLINOIS GLASS COMPANY,
Plaintiff,

v.

W. T. COPPEDGE, Defendant.

W. T. COPPEDGE, Defendant and Third-
Party Plaintiff,

v.

GLENS FALLS INSURANCE CO. et al.,
Third-Party Defendants.

United States District Court
S. D. New York.

Oct. 2, 1963.

Bigham, Englar, Jones & Houston,. New York City, for plaintiff, James H.. Simonson, New York City, of counsel.

Foley & Martin, New York City, for defendants American Coastal Lines, Inc. and W. T. Coppedge, Christopher E.. Heckman, New York City, of counsel.

WYATT, District Judge.

The two actions in the above caption were separately commenced by plaintiff on November 5, 1958 against the named. defendant American Coastal Lines, Inc. (in No. 139–303) and against the named defendant W. T. Coppedge (in No. 139–304). The actions are to recover for the loss of a cargo of pulpboard in transit by barge from Jacksonville, Florida to Trenton, New Jersey.

Jurisdiction is founded in each action on diversity of citizenship. It is alleged in both actions that plaintiff is an Ohio corporation with its principal place of business in Ohio.

American Coastal Lines, Inc., defendant in No. 139–303, is alleged to be a Massachusetts corporation and is therefore a citizen of Massachusetts. 28 U.S. C. § 1332(c). It is not alleged in what. state its principal place of business is located nor is it alleged that its principal place of business is in a state other than Ohio. Defendant therefore may be a citizen of Massachusetts as alleged in the complaint (paragraph Fourth) and also a citizen of another state, theoretically perhaps Ohio. In this action, therefore, there is a defective allegation of jurisdiction and no relief can be granted until the defect is cured. 28 U.S.C. § 1332(d); Fed.R.Civ.P. 8(a) (1) and Form 2(a) in Appendix of Forms; 2 Moore's Federal Practice (2d ed.) 1656–58, 1662–63..

W. T. Coppedge, defendant in No. 139–304, is alleged to have "an office and place of business and residing at Jacksonville, Florida". This is also a defective jurisdictional averment. Doubtless there is an intent and attempt to allege that Coppedge is a citizen of Florida, as indicated by paragraph Third of the amended complaint, but neither office, nor place of business nor residence establishes citizenship. 2 Moore's Federal Practice (2d ed.) 1661–63. The jurisdictional defect in this action also must be cured before any relief can be granted.

The defendant in each action answered and demanded trial by jury. Each defendant also brought in, with leave of Court, numerous Third Party Defendants, demanding trial by jury as against them. Fed.R.Civ.P. 14(a). These Third Party Defendants are insurance companies which are alleged to have insured the lost cargo.

By order filed January 13, 1960, Judge Levet directed that the actions be "consolidated for all purposes". Fed.R.Civ. P. 42.

Plaintiff now moves in each action for summary judgment in its favor and against the defendant on all issues except damages, as to which it asks "reference of the issue of damages to a Commissioner". Presumably the motions are meant to be made under Fed.R.Civ.P. 56.

After the motions for summary judgment had been made and argued and while they were under advisement, plaintiff asserted a claim against the Third Party Defendants (Fed.R.Civ.P. 14(a)) by filing a "cross-claim" against them, at the same time demanding a jury trial. This claim by plaintiff against the Third Party Defendants is based on policies of insurance said to have been issued by them in favor of plaintiff and covering the lost cargo; the policies of insurance appear to be the same as those on which the claims of defendant American Coastal and of defendant Coppedge against the Third Party Defendants are based.

The motion in each action will be considered separately.

## No. 139–303

The complaint is in three counts, obviously meant to be in the alternative because plaintiff has only one item of damages (the lost cargo) and can recover no more than its actual damages no matter under how many theories they are set forth.

The motion for summary judgment relates only to the first count, and for purposes of the motion the other two counts may be ignored except as background.

The first count is for failure to deliver a cargo entrusted for carriage to defendant. In this count, it is alleged that defendant American Coastal owned a barge named "C. F. Bean"; that plaintiff delivered to defendant at Jacksonville, Florida, 455 rolls of pulpboard to be transported to Trenton, New Jersey; that a bill of lading (copy of which is annexed to the complaint) was issued by defendant covering the shipment on the C. F. Bean; and that the property was lost in transit by reason of the negligence of defendant.

Both the moving papers and the opposing papers suffer from a failure to develop parts of the fact background in any detail and they also rely largely on affidavits of counsel. These are old actions, however, in which further delay in resolving a comparatively simple situation ought to be avoided if it is possible to see that no genuine issues exist.

The first question is: has the loss of the cargo in transit been established? This ought to have been easy for plaintiff, but only an affidavit of counsel is submitted in which it is claimed: "the failure to deliver is admitted". In view of the flat denial of paragraph Tenth of the complaint in paragraph Fourth of the answer, such claim by plaintiff must be examined with particular care.

The affidavit of plaintiff's counsel does state that he is "familiar with the facts" and that the cargo "was totally lost". This put it to defendant to raise an issue whether the cargo was lost or not. Defendant likewise submitted an affidavit of counsel which merely denies that the cargo "was totally lost" and states:

"The defendant has in its possession evidence that some of the shipment was salvaged". Clearly if defendant meant to raise any "genuine issue" as to this fact, defendant was obliged to submit such evidence on this motion. The arguments and contentions of defendant moreover indicate that the denial of defendant is not so much of the loss of the cargo as of the charge of negligence. It is noted that in answering the second count of the complaint defendant admits that "it has not delivered to plaintiff the merchandise referred to in the complaint" (paragraph Seventh of answer).

■ It is also important that plaintiff in the moving papers included a "Statement of material facts not in dispute" as required by General Rule 9(g) of this Court. No denial was made for defendant of the statement filed by plaintiff. The statement for plaintiff was thus admitted. General Rule 9(g).

The loss of the cargo in transit is thus established.

As to the first count, all of the facts alleged are admitted by the answer or otherwise established except the negligence of defendant as alleged in the complaint. Defendant American Coastal apparently was the charterer, and not the owner, of the barge but this does not affect the question of its liability.

Decision of the motion, therefore, turns on whether there is a "genuine issue" shown in the papers as to the negligence of defendant in its carriage of the cargo. While defendant carrier has denied the allegations of negligence, it appears to be the admitted fact that the cause of the cargo loss is unknown. The "Statement of material facts not in dispute" filed for plaintiff contains a statement that

"The cause of the sinking of the Barge 'C.F.Bean', resulting in loss of plaintiff's said cargo, is not known."

This statement is not denied for defendant carrier in its "Statement of material facts in dispute" and is therefore admitted. General Rule 9(g) of this Court.

The liability of the carrier depends in this situation on the location of the burden of proof. If plaintiff has the burden to show negligence, plaintiff must lose here. If defendant carrier has the burden to show absence of negligence or other fault on its part, then defendant must lose here.

It is clear that the transportation by defendant in this instance was governed by the Carriage of Goods by Sea Act ("Cogsa"; 46 U.S.C. § 1300 and following). The terms of the bill of lading, paragraph 1 thereof, expressly so provide. Such an agreement between shipper and carrier relating to carriage between two ports of the United States (not otherwise within Cogsa) is specifically permitted by Cogsa (46 U.S.C. § 1312). Defendant concedes on this motion that Cogsa was "incorporated into the bill of lading by reference".

Before there were any statutes on the subject (such as Cogsa), the issue of negligence or other "exceptions" did not arise because—outside of very rare instances—the carrier was absolutely liable for lost cargo. "All the shipper had to do to make his case was to prove receipt for carriage in good order, and non-delivery or delivery in bad order". Gilmore and Black, The Law of Admiralty, 119.

■ Cogsa has eliminated the absolute liability of the carrier by providing for various "exceptions" and by providing that the carrier shall not be liable without "actual fault" (46 U.S.C. § 1304(2) (g)) but the burden of proof to establish freedom from negligence is on the *carrier*. Arguments of defendant to the contrary must be rejected.

There are numerous authorities establishing that the burden is on carrier; aside from the specific language of Cogsa itself (46 U.S.C. § 1304(2) (g)), it is sufficient to refer to but a few.

In American Tobacco Co. v. The Katingo Hadjipatera, 81 F.Supp. 438, 445 (S.D.N.Y.1948), Judge Rifkind declared:

"Ordinarily a shipper need prove only that his goods were loaded in good condition and outturned damaged, in order to recover; * * * The burden then lies with the carrier

to exculpate itself by proving (a) that the harm resulted from an 'excepted cause', a cause for which it is statutorily not liable, or (b) that it exercised due diligence to avoid and prevent the harm; 46 U.S.C.A. § 1304, * * *".

On appeal, it was said in affirming Judge Rifkind's decision (194 F.2d 449, 450 (2d Cir. 1951); cert. denied, 343 U.S. 978, 72 S.Ct. 1076, 96 L.Ed. 1370, 1952):

"As to cargo proved to have been delivered to the ship in apparent good condition and out-turned damaged other than by the fire the shipowners and the charterer had the burden of proving that the loss was not due to their negligence."

In Schroeder Bros. Inc. v. The Saturnia, 226 F.2d 147, 149 (2d Cir. 1955) it was said (emphasis supplied):

"It is well settled that the carrier of goods by sea is prima facie liable for damage to cargo which, although in good condition when received by the carrier, outturns damaged at the end of the voyage, unless the carrier *can affirmatively show* that the immediate cause of the damage was an excepted cause for which the law does not hold him responsible."

See also Gilmore and Black, page 163.

The reliance of defendant carrier on Commercial Molasses Corp. v. N. Y. Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941) is entirely misplaced because the provisions of Cogsa were not there applicable, the barge there was a "mere bailee for hire", the contract there was one "for private carriage", and the barge had not there "assumed the obligation of a common carrier" (314 U.S. 108, 62 S.Ct. 159, 86 L.Ed. 89). These distinctions were pointed out specifically by the Supreme Court in discussing "burden of proof" (314 U.S. 108, 62 S.Ct. 156, 86 L.Ed. 89). Here, the bill of lading incorporated Cogsa by reference.

■■ Other contentions of defendant have likewise been considered and found without merit. For example, defendant urges that proof is lacking of the aver-

ment in the complaint that National Container Corporation was merged into plaintiff. The proof submitted by plaintiff on this point is very thin but there seems to be no doubt as to the fact. A standard financial book of reference (Moody's Manual, Industrials, 1958 edition, page 2789), of which judicial notice can be taken, confirms that on October 4, 1956 (not 1957, as alleged in the complaint) National Container Corporation was merged into plaintiff; the same source reports that National Container was "reincorporated in Ohio and operated as a subsidiary". Evidently this last aspect did not affect the transactions in suit because Coppedge, president of defendant American Coastal, testified that plaintiff took over the operations of National Container and continued under the agreement with defendant American Coastal (deposition, pp. 13, 14). Moreover, it would seem that the point could avail defendant nothing in any event because the bill of lading in this instance was made out in the name of plaintiff itself and not in the name of National Container.

■ The liability of defendant for the lost cargo has not been put at issue by anything submitted for defendant. The cause of the loss being unknown and the burden of proof in explanation being on defendant, liability of defendant is established.

■ There is no proof as to the amount of damages and the situation is one calling for the use of the procedure of Fed.R.Civ.P. 56(c). There is no basis for any "reference of the issue of damages to a Commissioner". A jury having been demanded, the issue should be tried to a jury.

No. 139–304

The amended complaint against defendant Coppedge has two counts.

The motion for summary judgment is based only on the second count. The first count may be ignored except as background.

The second count alleges in relevant part that defendant Coppedge made a written agreement with plaintiff under

date of August 29, 1955 under which Coppedge agreed that he would "carry full cargo insurance" on products of plaintiff shipped by American Coastal; that 455 rolls of pulpboard were delivered by plaintiff at Jacksonville, Florida for shipment to Trenton, New Jersey; that a bill of lading was issued by American Coastal covering the shipment on the barge C.F. Bean; that the 455 rolls of pulpboard were stowed on the decks of the barge; that the barge sank and the cargo was a total loss; that Coppedge had insured the cargo with "certain underwriters"; that plaintiff gave notice to them of the loss and made claim for $106,751.47; that the underwriters refused to pay the full loss on the ground that there was an "on deck" limitation of $50,000 in the policy and that this limitation was applicable because the cargo had been carried "on deck"; and that "by reason of the premises" defendant Coppedge has violated his contract of August 29, 1955 "to fully insure".

The August 29, 1955 agreement and the bill of lading are part of the complaint.

An argument for defendant Coppedge based on the August 29, 1955 agreement can be disposed of at the outset. It is said that the only obligation of defendant Coppedge under that agreement was to insure the cargo while on land. This argument is without any merit. The provision in paragraph 1 of the agreement is that "Coppedge shall also supply and pay for full cargo insurance on the aforesaid products". There is nothing even to suggest that this is in any way limited to insurance while the cargo was on land; indeed the word "cargo" would be scarcely appropriate if such a limitation were intended, for cargo means the "freight of a ship, airplane or vehicle" (Webster's Third New International Dictionary, p. 339). Moreover, the option given to plaintiff in paragraph 10 of the August 29, 1955 agreement, the amount of deduction there permitted, and the "waiver of subrogation" there contemplated, all underscore the normal meaning of the "full cargo insurance" obligation of Coppedge.

In view of the disposition to be made of this motion, the argument for defendant Coppedge based on the averment that plaintiff obtained its own insurance and has been paid, or largely paid, need not be considered. The facts as to this are not clear on the present record and can be further developed at the trial, if counsel are so advised.

The following material facts exist without substantial controversy (Fed.R.Civ.P. 56(d)):

1. National Container Corporation and defendant Coppedge made an agreement in writing, dated August 29, 1955, which is Exhibit A to the complaint.

2. Prior to October 31, 1957, National Container Corporation was merged into plaintiff and plaintiff was the survivor corporation entitled to all benefits of, and subject to all the obligations of, the August 29, 1955 agreement.

3. Defendant Coppedge obtained from the Third Party Defendants insurance policies, each in the form annexed as Exhibit 1 to the moving affidavit and each in the amount set forth in Exhibit A to the Third Party complaints of defendant Coppedge and defendant American Coastal, filed respectively February 9, 1959 and January 14, 1960. The form of policy, Exhibit 1 to the moving affidavit, is stated to be effective from August 1, 1955 to August 1, 1956 but each was thereafter renewed and each was in effect from August 1, 1957 to August 1, 1958.

4. On or about October 31, 1957, plaintiff delivered at its mill in or near Jacksonville, Florida, to agents of defendant Coppedge 455 rolls of pulpboard for trucking to a terminal in Jacksonville and loading on a barge there for water shipment to Trenton, New Jersey.

5. The 455 rolls were trucked by agents of defendant Coppedge to a terminal in Jacksonville and were there loaded on the barge C.F.Bean which barge was under charter to American Coastal Lines, Inc.

6. The barge C.F.Bean sank in transit and the cargo (the 455 rolls of pulpboard) was a total loss.

7. Plaintiff gave due notice to the underwriters, the Third Party Defendants, of its total loss, claimed to be $106,-751.47, which the underwriters refused to pay, alleging, among other things, that the cargo had been carried by the C.F. Bean "on deck" and that the limit of liability on all the policies was $50,000 in the aggregate because each policy had a clause 20 reading in relevant part:

"LIMIT OF LIABILITY
  "BARGES: 150,000—not exceeding $50,000—on Deck".

The disposition of the motion depends upon whether the foregoing facts as specified together with any other facts of record existing without substantial controversy, establish that the cargo was carried "on deck" of the C.F.Bean within the meaning of the policies of insurance.

Plaintiff on this motion claims that the cargo was carried "on deck" beyond any possibility of dispute.

Plaintiff in its "cross claim" against the Third Party Defendants appears to claim that the cargo was not carried "on deck."

Defendant Coppedge claims on this motion that the cargo was not carried "on deck". In its complaint against the Third Party Defendants, this defendant appears to have avoided the question.

In their pleadings, the Third Party Defendants claim consistently that the cargo was carried "on deck".

From the characteristics of the C.F. Bean as they appear in the record, there was no distinction between cargo on deck and cargo below deck. All the cargo was carried in exactly the same way, in an open bin above what Mr. Coppedge called a "lower deck" which was from four to six feet above the bottom of the barge. While there seems to be no direct statement in the record, it would seem to have been impossible to carry cargo between the lower deck and the barge bottom.

In this situation and with no more factual background than is here available, the meaning of "on deck" as used in the policies cannot be found to be so clear as is argued for plaintiff. If the cargo was carried "on deck" of the C.F.Bean within the meaning of the policies, the result would be that all cargo on the C.F.Bean would always be subject to the $50,000 limitation. It may be that this is the correct result, but more of the factual and legal background ought to be available for consideration before reaching it.

In the briefs of counsel on these motions, no precedent or other authority is cited dealing with the expression "on deck" when used with any barge, much less a barge carrying cargo as did the C.F.Bean. The case from the year 1900 (The Kirkhill, 99 F. 575, C.C.A. 4th), cited for plaintiff, is no authority in the case at bar. The Kirkhill was a steamship with normal below deck cargo space; it was held that the master properly refused to give an unqualified, or clean, bill of lading for cotton stored on deck because of danger from weather, fire and jettison.

No opinion is here expressed as to whether at trial the meaning of "on deck" will, or will not, present a question for determination by a jury. But before determining what the expression "on deck" means in the context of these consolidated actions, more facts should be available. Such facts might be, by way of example, the types of barges employed for carrying cargo, whether any barges carry cargo both on deck and below deck, the practical significance whether cargo on barges is carried on deck or below deck, whether the pulpboard of plaintiff would be damaged by being carried on deck from exposure to weather or otherwise, whether plaintiff knew the open bin characteristic of the C.F.Bean, whether plaintiff had ever made prior shipments of pulpboard on the C.F.Bean, what knowledge plaintiff had of the insurance policies issued by the Third Party Defendants and when that knowledge was obtained, the origin of the "on deck"

limitation as to barges in marine insurance policies, the history of such limitation as to barges, how premiums are calculated as to barge cargo and whether a difference applies to cargo on deck from that below deck, whether the "on deck" limitation has ever been interpreted in the trade or elsewhere with reference to barges, whether these actions are of first impression in this respect, etc.

Moreover, it seems inadvisable to make a determination of the meaning of the "on deck" limitation, absent some showing by the Third Party Defendants who, although given notice of these motions, have not appeared—doubtless on the theory that no relief was asked against them.

The motion for summary judgment will, therefore, be denied.

■■■ As to the motion in No. 139–303, there is no genuine issue to be tried so far as liability of defendant American Coastal is concerned. Plaintiff asks for a "reference of the issue of damages to a Commissioner", a procedure which is not available and which in any event would not be proper here. In this action at law, where defendant has timely demanded a jury, the issue of damages should be tried before a jury. As will next appear, there is no reason to sever (a) the action as between plaintiff and defendant American Coastal from (b) the third party claim by defendant against the Third Party Defendants and (c) the claim by plaintiff against the Third Party Defendants.

As to the motion in No. 139–304, although the motion cannot be granted to any extent, the Court has above specified a number of facts that appear without substantial controversy and at trial the facts so specified shall be deemed established. Fed.R.Civ.P. 56(d). It may be that as between plaintiff and the Third Party Defendants, these specified facts may not be deemed established because the Third Party Defendants have not appeared on these motions, although they were given notice of the motions. This point need not now be determined since—unless facts of extraordinary significance not now of record are later proved—the facts specified herein cannot be controverted in good faith.

There remains the duty of the Court to "directing such further proceedings in the action as are just". Fed.R.Civ.P. 56(d).

■■■ The specification of facts that appear without substantial controversy has considerably narrowed the issues. It thus appears that to sever the action as between plaintiff and defendant American Coastal for trial therein of damages alone, leaving all other claims for separate trial in due course, would merely add further to the already extended delay in resolving this matter completely. It is much more appropriate and in the interests of justice to direct that all claims between all parties be tried immediately along with the immediate trial of damages as between plaintiff and defendant American Coastal.

Summary judgment, interlocutory in character, will be rendered on the issue of liability alone in favor of plaintiff and against defendant American Coastal because there is no genuine issue as to any material fact establishing liability and plaintiff is entitled to the judgment indicated as a matter of law. Fed.R.Civ.P. 56(c).

The actions as now consolidated should be added to the appropriate jury calendar for an immediate trial of the issue of damages as between plaintiff and defendant American Coastal, and for trial of the other issues as hereinafter to be directed.

It will be directed that at the immediate trial of such issue of damages there be tried at the same time (1) all claims of defendant American Coastal against the Third Party Defendants (2) all claims of defendant W. T. Coppedge against the Third Party Defendants and (3) all claims of plaintiff against the Third Party Defendants.

No order will be entered on this opinion until the jurisdictional defects point-

ed out at the beginning of this opinion are remedied. Plaintiff is given ten (10) days from the date hereof to remedy the deficiencies, if, as assumed, they are remediable.