**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff,**

v.

**CHINA UNION LINES LIMITED, Defendant.**

No. 67 Civ. 1690.

United States District Court,
S. D. New York.

Sept. 5, 1973.

Bigham, Englar, Jones & Houston by James H. Simonson, New York City, for plaintiff.

Hill, Betts & Nash by Eli Ellis and Edward H. Duggan, Jr., New York City, for defendant.

MOTLEY, District Judge.

*Memorandum Opinion*

Plaintiff insurance company brings this action against the shipowner to recover the amount it paid a salvor for recovery of the ship and cargo which were stranded.

Approximately 5500 tons of sulphur were shipped in April, 1961 on board the M.V. "UNION MARINER", owned by defendant China Union Lines Limited, at Beaumont, Texas for carriage to Montreal and Chandler, Canada. The shipment was pursuant to a voyage charter party dated February 2, 1961 between Canadian Gulf Line Limited and Texas Gulf Sulphur Company, Inc., the charterer. (Pl's Exh. 4).

According to the bills of lading (Pl's Exhs. 1 and 2), the cargo was delivered to the shipper in good condition.

Plaintiff United States Fire Insurance Company, the subrogee of Texas Gulf

Sulphur, and defendant China Union Lines Limited are assumed to be bound by the charter party, the issue of their obligations under the agreement not having been raised in the pretrial order.

Plaintiff seeks to recover $51,237.69, the amount cargo was held liable to pay the salvor, in an arbitration proceeding. Plaintiff claims that defendant, in violation of the shipowner's agreement to deliver the cargo at destination in like good order and condition as when shipped, delivered the cargo subject to the lien of a salvor.

Defendant counterclaims for damages in the amount of $8,686.88, cargo's share under the general average published by the adjusters on March 27, 1964. A trial was held on March 8 and 9, 1973.

The court finds for defendant with respect to both claims.

The charter provided that "[t]he Vessel on tendering hereunder shall as far as due diligence can make her so, be tight, staunch, strong and ready for service." (Voyage Charter Party, Part II, ¶ 1.) However, the agreement also provided that " . . . [t]he owner and the Vessel in all matters arising under this Charter Party shall be entitled to the like privileges and rights and immunities as are contained in Section 3(6), Section 4, and Section 11 of the Carriage of Goods by Sea Act of the United States [COGSA] approved April 16, 1936." (Voyage Charter Party, Part II, ¶ 19). The statute provides in pertinent part:

(1) Neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness unless caused by want of due diligence on the part of the carrier to make the ship seaworthy, and to secure that the ship is properly manned, equipped, and supplied. . . . Whenever loss or damage has resulted from unseaworthiness, the burden of proving the exercise of due diligence shall be on the carrier or other persons claiming exemption under this section.

(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

(a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship;

\* \* \* \* \* \*

(q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage. 46 U. S.C. § 1304.

Finally, the agreement contained an amended Jason Clause which stated:

In the event of accident, danger, damage, or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Owner is not responsible by statute, contract, or otherwise, the cargo, shippers, consignees, or owners of the cargo shall contribute with the Vessel and its Owner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred. (Voyage Charter Party, Part II, ¶ 22).

■ While COGSA places the burden of proof on the carrier to show that the immediate cause of damage to goods in good condition when received was an " . . . excepted cause for which the law does not hold him responsible," Schroeder Bros. Inc. v. The Saturnia, 226 F.2d 147, 149 (2d Cir. 1955), COGSA is not directly applicable to charter parties. 46 U.S.C. § 1305. While the charter party incorporates certain sections of COGSA, the agreement's reference to the statute was limited to provisions favorable to the shipowner.

"Therefore, in light of the fact that the ordinary burden of proof between a private shipper and carrier was not altered either by statute or contract, the rule of Commercial Molasses [Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L. Ed. 89 (1941)] . . . prevails. In that case, the Court held that the burden of proving a breach of the private carriage contract or of negligence by the bailee carrier was on the shipper. To be sure, the Court said that a shipper could make a *prima facie* case by simply establishing the loss of his goods and that the carrier then had a duty to come forward with information concerning the loss or risk a plaintiff's verdict, but it also clearly stated that if the trier of fact was left uncertain, the shipper had not met his burden. [Citations omitted]." In re Marine Sulphur Queen, 460 F.2d 89 (2d Cir. 1972), cert. denied, 409 U.S. 982, 93 S.Ct. 326, 34 L.Ed.2d 246 (1972). The court noted that, given the existence of a general exceptions clause in the Charter Party similar to the one in the instant case (Voyage Charter Party, Part II, ¶ 25), " . . . where the shipper was unable to prove that his loss was occasioned by some cause for which the carrier was liable, there can be no recovery." 460 F.2d at 105.

■ Plaintiff failed to satisfy this burden. Plaintiff has conceded that "[t]he evidence did not establish the cause of the vessel's stranding." [Findings of Fact Proposed by Plaintiff, Number 11.] There was no evidence introduced on the trial that the ship's navigation charts were obsolete, that the shipowner had failed to provide a competent crew or that any of the ship's equipment was not functioning properly. Indeed, defendant offered evidence that the ship's equipment had been inspected prior to the voyage. Instead, the stranding may have been a product of unanticipated changes in the directions of the currents or the weak power from radio stations upon which the ship's radio direction finder relied.

■ Plaintiff relied on the failure of defendant to call the vessel's master and third mate. Plaintiff claims that "[b]oth the Master and Third Mate were crucial witnesses as to the cause of the stranding and defendant, to whom they were 'primarily available,' was obligated to produce them either for deposition or at the trial." [Findings of Fact Proposed by Plaintiff, April 12, 1973, Number 20.] Plaintiff argues that while the master was no longer in defendant's employ and was outside the jurisdiction at the time of trial, defendant should have obtained the master's deposition. Assuming without deciding that, under these circumstances, defendant's failure to call these witnesses was unexcused despite his production of the first mate's deposition, nevertheless, "The opponent whose case is a denial of the other party's affirmation has no burden of [persuasion] . . . . A party may legally sit inactive, and expect the proponent to prove his own case. Therefore, until the burden of producing evidence has shifted, the opponent has no call to bring forward any evidence at all . . . . Hence, though he takes a risk in so doing, yet his failure to produce evidence cannot at this stage afford any inference as to his lack of it; otherwise, the first party would virtually be evading his legitimate burden." 2 J. Wigmore, Evidence § 290 (3d ed. 1940).

■■ Nor was plaintiff's failure to meet its burden excused by its reliance on the defendant's listing of the vessel's master in its pre-trial memorandum as one of the witnesses it intended to call. A party cannot reasonably rely on the other side to help prove its case. At the very least, plaintiff should have inquired of defendant closer to the time of trial whether it still intended to call the master.

Since plaintiff failed to satisfy its burden of showing that the shipowner breached its duty of "due diligence," the court finds for defendant with respect to plaintiff's claim and defendant's counter-claim.