633 P.2d 1044

**Dale F. WEBB, Plaintiff-Appellant,**

v.

**AERO INTERNATIONAL, INC., a corporation, and Yuma County Airport Authority, a corporation, Defendants-Appellees.**

**No. 1 CA–CIV 4895.**

Court of Appeals of Arizona,
Division 1, Department B.

June 4, 1981.

Rehearing Denied July 2, 1981.

Review Denied Sept. 10, 1981.

52

Engler & Engler by Richard D. Engler, Yuma, for plaintiff-appellant.

Beer, Kalyna & Simon by Paul Beer, Donald P. Roelke, Phoenix, for defendants-appellees.

OPINION

JACOBSON, Judge.

The issue in this case is whether the persons in control of an airplane parking area are bailees with regard to an airplane tied down in the area.

This issue arose out of an action brought by plaintiff-appellant, Dale F. Webb, against appellees, Aero International, Inc. (Aero) and Yuma County Airport Authority, for damages occurring to Webb's airplane when it turned over in high winds while parked at a "tie down" area controlled jointly by Aero and the Airport Authority. After trial, the superior court, sitting without a jury, entered judgment in favor of all the defendants and Webb has appealed.

The facts established at trial are that Aero is the base operator of an airport located near Yuma, Arizona. In connection with its operation it maintains jointly with the Airport Authority a tie-down or parking area for airplanes using the the airport. This tie down area consists of a paved sur-face across which are two parallel long metal cables. The cables are attached at intervals to the parking surface. Also at intervals along these cables are either chains or ropes one end of which is secured to the cables. Pilots secure their airplanes by fastening the chains or ropes to the underside of each wing and the tail section. The airplane is thus held in place by the fastened cables. Aero charges airplane owners who are based in Yuma a monthly fee of $15.00 to use this tie down area for parking their airplanes, although no individual tie-down spot is assigned to any specific airplane. Individual pilots are responsible for parking and securing their own planes.

During the time in question, Webb was a paying user of the tie-down area. In addition, webb left a key to his airplane with Aero so that employees of Aero could move the plane for the purposes of maintenance. On the day in question, Webb rented his plane to Franklin Fry, who took it for a short flight and then returned it to the tie-down area. Fry secured the plane, using two chains provided by Aero and a rope apparently left by someone else. Later that day, record winds hit the area. After the winds subsided, Webb's plane was found upside down, with the tie-down rope and one tie-down chain missing. This action for damages followed.

Webb's main contention both in the trial court and on appeal is that his relationship with Aero constituted a bailment, thereby shifting to Aero the burden of showing that it was not negligent when the bailed airplane was damaged. *See Commercial Molasses Corp. v. N.Y. Tank Barge Corp.*, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941).

The law in Arizona concerning bailments is aptly stated in *Allright Phoenix Parking, Inc. v. Shabala*, 6 Ariz.App. 21, 23, 429 P.2d 513, 515 (1967) (an automobile parking lot case):

To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. (Quoting from *Freeman v. Myers Auto-*

mobile Service Co., Inc., 226 N.C. 736, 40 S.E.2d 365 (1946).)

In analyzing whether a bailment occurs where the owner of the vehicle retains the keys and parks the car himself although paying a fee for the privilege of parking, the *Allright* court quoted with approval from *Taylor v. Philadelphia Parking Authority*, 398 Pa. 9, 156 A.2d 525 (1959):

> The characterization of the relationship as a bailment or a lease does not depend upon the physical structure of the place where the article is stored, as plaintiffs would have us hold, but rather it is based solely on whether the alleged bailor delivered the custody and control of the item to the bailee. * * * Since here plaintiffs reserved possession of the car at all times by retaining the keys thereto, defendant acquired no dominion over the vehicle nor any right to control removal of it; hence there was no bailment.

6 Ariz.App. at 23, 429 P.2d at 515.

Similar results have been applied to airport tie-down areas where the owner parks the airplane, secures it, and retains possession of the keys. *Balcar v. Aircrafters, Inc.*, 360 A.2d 155 (Del.Super.1976).

Webb, while recognizing the *Allright* and *Balcar* rationale, argues that a bailment existed in the present case, because (1) Aero retained a key to the plane and (2) Aero occasionally moved the plane at Webb's request in order to service it, and once apparently moved the plane without his permission.

We note that both of Webb's points apply only to Aero and not to the Airport Authority. However, even as to Aero, Webb's argument is unpersuasive. We see little significance in the fact that Aero had a key to the plane. Webb had several other keys to the plane, and he and others used the plane without informing Aero. In our opinion, Aero's occasional movement of the plane does not furnish support for Webb's bailment argument. Each time Aero moved the plane a possible bailment was created, but even that theoretical bailment ended when Aero surrendered possession of the plane to Webb or to someone else acting

with Webb's permission. Here Fry was the last person in possession of the plane before it was damaged. (There is no evidence that Aero's permission was necessary for Webb's permittee to use the plane.) Because Aero was not in either actual or constructive possession of the plane at the time of the windstorm, Aero was not a bailee at that time.

Webb cites several cases in support of his bailment argument, but most of these cases are inapplicable here because they involved airplane hangar or tie-down lot operators who had either actual or constructive possession of the plane at the time it was damaged. *See e. g. City of Jackson v. Brummett*, 224 Miss. 501, 80 So.2d 827 (1955). Webb also cites *Meyer v. Moore*, 329 P.2d 676 (Okl.1958), which held that the operator of an airplane tie-down lot was a bailee of an airplane even though he never took possession of it. We find this case unpersuasive. The defendant in that case conceded (wrongly we believe) that a bailment existed. Perhaps because of this concession, the court failed to critically analyze the issue. The court never mentioned the generally accepted rule requiring actual or constructive possession by the alleged bailee. Furthermore, the court did not cite any authority in support of its holding, nor did the court attempt to distinguish its seemingly contrary prior decision in *Lord v. Oklahoma State Fair Ass'n.*, 95 Okl. 294, 219 P. 713 (1923).

For the reasons expressed above, we hold that Aero and the Airport authority were not bailees of Webb. Based upon this lack of a bailment, the trial court properly determined that Webb had failed to sustain his burden of proving that Aero and the Airport Authority were negligent in causing the damages suffered by Webb's airplane.

Judgment affirmed.

HAIRE, P.J., and EUBANK, J., concur.