245 F.2d 84
 JAMES McWILLIAMS BLUE LINE, Inc., as Charterer, Libellant-Appellee.
v.
ESSO STANDARD OIL COMPANY, Respondent-Appellee and
Cross-Appellant, and Conners-Standard Marine
Corporation, Respondent-Impleaded-Appellant.
 No. 292, Docket 24158.
 United States Court of Appeals Second Circuit.
 Argued April 4, 1957.
Decided May 15, 1957.
 
 1
 Macklin, Speer, Hanan & McKernan, New York City (Martin J. McHugh, New York City, of counsel), for libellant-appellee.
 
 
 2
 Kirlin, Campbell & Keating, New York City (Stephen J. Buckley and Raymond, T. Greene, New York City, of counsel), for respondent-appellee and cross-appellant.
 
 
 3
 Purdy, Lamb & Catoggio, New York City (Edmund F. Lamb and Thomas J. Irving, New York City, of counsel), for respondent-impleaded-appellant.
 
 
 4
 Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.
 
 
 5
 LEIBELL, District Judge.
 
 
 6
 This is an appeal from an interlocutory decree in Admiralty, entered after a trial before Judge Cashin, which adjudged that the libellant, James McWilliams Blue Line, Inc., recover its damages primarily from the respondent-impleaded, Conners-Standard Marine Corporation, and secondarily from the respondent, Esso Standard Oil Company. Both Conners and Esso have appealed.
 
 
 7
 Conners appeals on the ground that libellant's action is barred by laches, and further that Esso has failed to prove a cause of action against Conners for indemnity. Esso cross appeals from that part of the interlocutory decree which adjudged Esso to be secondarily liable and seeks reversal of that part only in the event that this Court should excuse Conners from primary liability.
 
 
 8
 Libellant filed his libel against Esso on October 2, 1953. It alleged that on October 3, 1950, libellant as a charterer in possession, chartered and let to Esso the barge 'Petroleum No. 7,' which was in all respects seaworthy and properly manned and equipped, all in accordance with the terms of a charter agreement entered into between libellant and Esso. The agreement provided, inter alia, that the barge was to be returned to the libellant in the same condition as when received, normal wear and tear excepted. The libel further alleged that on November 25, 1950, Esso returned the barge to libellant in a damaged condition, and that the damage was due to the negligence of Esso, or of those for whose acts Esso is responsible; and that thereby libellant suffered a monetary loss, for which a recovery was sought.
 
 
 9
 On April 2, 1954, Esso filed its answer to the libel and its petition to implead Conners, pursuant to Admiralty Rule 56.[1]
 
 
 10
 In its answer to the libel Esso admitted the making of the charter agreement on October 3, 1950, but denied that the barge was seaworthy when turned over to Esso; it admitted that the barge was returned to libellant on November 25, 1950, but denied that it was returned in a damaged condition.
 
 
 11
 Esso further alleged in its answer that during the period of its time charter, it engaged the service of the Tug 'Maple Leaf' pursuant to a towing agreement with the tug's owner, Conners; that on October 30, 1950, the tug 'Maple Leaf' in navigating the barge, negligently caused the barge to strike the southeast bank of the Genessee River, near its junction with the Barge Canal, and that any damage sustained by the barge while under charter to Esso, if not resulting from the unseaworthy condition of the barge or from the ordinary wear and tear, was caused solely 'by the fault, neglect and breach of contract' of Conners and the tug operated by it.
 
 
 12
 In its petition to implead Conners, Esso realleged the making of the towing agreement with Conners, and that any legal damage sustained by the barge 'Petroleum No. 7' while under charterer to Esso 'was caused solely by the fault, neglect and breach of contract' of Conners and the tug 'Maple Leaf' operated by Conners.
 
 
 13
 Conners, after unsuccessfully moving before Judge Goddard to dismiss Esso's impleading petition, filed its answer both to the libel and to the petition, on July 29, 1954. After making certain denials, Conners set up two affirmative defenses to the libel and petition: (1) Laches, and (2) that the alleged damaged condition of the barge was in existence prior to the time the barge was first taken in tow by Conner's tug 'Maple Leaf.'
 
 
 14
 The respondent, Esso, filed exceptions to the special defenses asserted by Conners in its answer to the petition to implead. In November 1954 Judge Dawson overruled the exceptions and left to the trial court, after it had heard all the facts, the determination of the issues raised by the special defenses. The action came on for trial before Judge Cashin.
 
 
 15
 The District Judge in an opinion filed April 13, 1956, in effect found that the barge was seaworthy when surrendered to Esso under the charter agreement in October of 1950; that on October 30, 1950, the barge while under the control and tow of the tug 'Maple Leaf,' was caused to be grounded on the bank of the Genessee River, while the tug was attempting to turn the barge at the entrance to the New York State Barge Canal; and that on November 25, 1950, Esso returned the barge to libellant in a damaged condition. The correctness of those findings is not in issue. They have been accepted by all parties on this appeal. Conners, on its appeal, contends that the 'Conclusions of Law' reached by the trial judge were incorrect.[2]
 
 
 16
 Esso, as charterer or bailee was responsible to libellant for any damage to the chartered barge caused by the negligence of those to whom Esso, entrusted the barge. O'Donnell Transp. Co. v. M. & J. Tracy, 2 Cir., 150 F.2d 735; Seaboard Sand & Gravel Corp. v. Moran Towing Corp., 2 Cir., 154 F.2d 399; New York Trap Rock Corp. v. Christie Scow Corp., 2 Cir., 162 F.2d 624; Roah Hook Brick Co. v. Erie R. Co., 2 Cir., 179 F.2d 601, 605. The libel was timely filed as to Esso. On the proof and the law libellant was entitled to an interlocutory decree against Esso.
 
 
 17
 As to the claim of Esso against Conners, the latter argues that the laches is based on N.Y. Civil Practice Act, 49, subd. 6, which makes three years the period of limitation for 'an action to recover damages for an injury to property' resulting from negligence, and that the six year statute of limitation of N.Y.C.P.A. § 48, subd. 1, applicable to 'an action upon a contract obligation or liability express or implied,' does not apply. Conners contends that since the impleading petition was filed more that three years after the date of the grounding of the barge (October 30, 1950) laches is presumed; that the burden of coming forward with proof to show justification for the delay and that respondent-impleaded was not prejudiced by the delay, was upon the libellant and Esso; and that they did not submit any proof thereon.
 
 
 18
 A careful reading of the towing agreement does not disclose any express provision on the part of the respondent-impleaded to 'indemnify' the respondent against any claim of libellant based on the damage sustained by libellant's barge due to its negligent towing by the respondent-impleaded. But the towing agreement does give rise to a 'warranty of workmanlike service,' which will be hereinafter explained.
 
 
 19
 It is unnecessary for us to consider in detail on this appeal any question of laches. In the case at bar the towing agreement and respondent-impleaded's breach thereof, gave rise to a claim on the part of respondent against the respondent-impleaded to which the six year statute of limitations, N.Y.Civ.Prac.Act, § 48(1) would be applicable. The defense of laches would fail as to that claim.
 
 
 20
 Applying the principle of warranty discussed in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 133, 76 S.Ct. 232, 100 L.Ed. 133, the towing agreement between the respondent and respondent-impleaded necessarily implied an obligation on the part of the respondent-impleaded to tow libellant's barge properly and safely. Competency and safety were essential elements of the towing service undertaken by the respondent-impleaded. The very nature of the towing agreement implied a 'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.' Ryan v. Pan-Atlantic Corp., supra, 350 U.S. at pages 133-134, 76 S.Ct. at page 237.
 
 
 21
 Under the doctrine of the Ryan case, the form of the interlocutory decree herein should be modified so as to provide (1) that libellant recover from the respondent the amount of its damages resulting from the grounding of the barge on October 30, 1953, while it was in tow of respondent-impleaded's tug 'Maple Leaf'; and (2) that the respondent recover from the respondent-impleaded the amount it may be required to pay libellant for the damages thus sustained by the barge.
 
 
 22
 The interlocutory decree of the District Court should be modified accordingly.
 
 
 
 [1]
 Admiralty Rule 56, 28 U.S.C.A. in part provides: 'In any suit, whether in rem or in personam, the claimant or respondent (as the case may be), shall be entitled to bring in (by petition) any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. * * * such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain.'
 
 
 [2]
 The District Judge concluded:
 'The only real issue in this case appears to be the defense of laches raised by the impleaded respondent (Conners) with respect to the respondent's (Esso) petition. We are of the opinion that this defense is not supported either in fact or law.
 'Even assuming that the respondent (Esso) had no action for indemnity against the impleaded respondent (Conners), and the New York State three year Statute of Limitations, Civil Practice Act, § 49, is to be considered, we think on the facts of this case any presumption of laches has been overcome.
 'There is not a scintilla of evidence to show that the impleaded respondent was in any way prejudiced by the delay in this case. * * *
 'In any event, respondent (Esso), by virtue of its relationship both written and implied with the impleaded respondent (Conners), pleaded and proved a claim for indemnity. (Citing cases.) It is apparently conceded that as to a claim for indemnity there is no question of laches.' (145 F.Supp. 394.)