547 F.2d 97
 WESTERN TRANSPORTATION CO., a corporation, Plaintiff-Appellee,
v.
PAC-MAR SERVICE, INC., a corporation, Defendant and
Third-Party Plaintiff-Appellee,
v.
GUY F. ATKINSON CO., a Nevada Corporation, d/b/a Willamette
Iron & Steel Co., Third-Party Defendant-Appellant,
v.
WILH. WILHELMSEN A/S, a Foreign Corporation, Intervenor-Appellee.
WESTERN TRANSPORTATION CO., a corporation, Plaintiff-Cross-Appellee,
v.
PAC-MAR SERVICE, INC., a corporation, Defendant and
Third-Party Plaintiff-Cross-Appellant,
v.
GUY F. ATKINSON CO., a Nevada Corporation, d/b/a Willamette
Iron & Steel Co., Third-Party Defendant Cross-Appellee,
v.
WILH. WILHELMSEN A/S, a Foreign Corporation,
Intervenor-Cross-Appellee.
WESTERN TRANSPORTATION CO., a corporation, Plaintiff-Cross-Appellee,
v.
PAC-MAR SERVICE, INC., a corporation, Defendant and
Third-Party Plaintiff-Cross-Appellee,
v.
GUY F. ATKINSON CO., a Nevada Corporation, d/b/a Willamette
Iron & Steel Co., Third-Party Defendant-Cross-Appellee,
v.
WILH. WILHELMSEN A/S, a Foreign Corporation,
Intervenor-Cross-Appellant.
 Nos. 75-1408, 75-1758 and 75-1785.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 6, 1976.
 
 Eugene D. Cox (argued), Portland, Or., John Dudrey (argued), Portland, Or., for appellant in 75-1408 and for appellee in 75-1758, 75-1785.
 Paul N. Daigle (argued), of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for appellant in 75-1758 and for appellee in 75-1408, 75-1785.
 John R. Brooke (argued), of Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for appellant in 75-1785 and for appellee in 75-1408, 75-1758.
 William F. White (argued), of White, Sutherland, Parks & Allen, Portland, Or., for appellee in 75-1408, 75-1758, 75-1785.
 Before ELY, HUFSTEDLER and TRASK, Circuit Judges.
 PER CURIAM:
 
 
 1
 This four party action in admiralty is before us on appeals from judgments rendered by the district court for the District of Oregon. The facts are set forth in the district court opinion published in Western Transportation Co. v. Pac-Mar Services, Inc., 376 F.Supp. 530 (D.Or.1974). Our examination of the record convinces us that the trial judge accurately determined the facts and applied the correct legal principles, and we therefore affirm his disposition. The oral argument and additional cases cited prompt us to make some further comments.
 
 
 2
 Briefly, Western Transportation Co. (Western) owned house Barge 37 (Barge). Guy F. Atkinson Co. d/b/a Willamette Iron & Steel Co. (WISCO), engaged in making extensive repairs on a large tanker, employed Pac-Mar Services, Inc. (Pac-Mar) to perform sandblasting work on the craft. Pac-Mar rented Barge in order to fill it with the sand to be used in the sandblasting. Although Barge was delivered to Pac-Mar on December 28, 1972, it was entrusted to WISCO, whose employees were responsible for its care and inspection. During the next several days, two or three feet of water entered Barge, and on January 6, 1973, between 10:00 p.m. and 11:00 p.m., Barge floated down the Willamette River in a capsized condition. It was intercepted and towed to waters in a slip area at Portland where soon thereafter it sank, coming to rest against the after section of the SS Turandot, owned by Wilh. Wilhelmsen A/S (Wilhelmsen), and blocking its departure scheduled for the following day. Western soon raised and removed Barge.
 
 
 3
 Western filed suit against Pac-Mar, its bailee, Pac-Mar impleaded WISCO, pursuant to Fed.R.Civ.P. 14(c), as a third party defendant and sought indemnity for such damages as Western might recover from it. Wilhelmsen intervened and sought damages against all three parties for blocking the scheduled departure of the Turandot.
 
 
 4
 Based upon the significant relationship of those events to traditional maritime activity, we affirm the trial court's finding of admiralty jurisdiction. See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); T.J. Falgout Boats, Inc. v. United States, 508 F.2d 855, 856-59 (9th Cir. 1974), cert. denied, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975). The fact that the court below also found that the use of Barge as a floating warehouse was "non-maritime" does not preclude the finding of admiralty jurisdiction. Admiralty jurisdiction was based upon the presence of traditional maritime issues such as the cause of a vessel's sinking, the liability for its recovery, and the responsibility for the detention of a vessel. The question of jurisdiction was not even raised below either by pleading or by pretrial order. In the pretrial order, the parties agreed that "(t)his court has admiralty jurisdiction under 28 U.S.C. § 1333(1)." We also agree.
 
 
 5
 The trial court also found that the capsizing and sinking of Barge proximately resulted from WISCO's negligent failure to take appropriate action as soon as it learned that water was seeping into Barge's compartments. The court found no negligence by Pac-Mar except that based upon the obligation of a bailee to use reasonable care and return its bailment in good order and condition, regardless of whether the bailment is entrusted to a third party and injured by the latter's negligence. Washington Tug & Barge Co. v. Weyerhauser Timber Co., 22 F.2d 665, 668-69 (9th Cir. 1927); Shamrock Towing Co. v. Tully & DiNapoli, Inc., 91 F.Supp. 239, 244-45 (E.D.N.Y.1950), aff'd, 187 F.2d 872 (2d Cir. 1951). It therefore determined that WISCO was liable to Western for damages Western had sustained by the loss of Barge. As to these losses it found that Pac-Mar was secondarily liable. See James McWilliams Blue Line, Inc. v. Esso Standard Oil Co., 245 F.2d 84 (2d Cir. 1957); Washington Tug & Barge Co. v. Weyerhauser Timber Co., supra; Shamrock Towing Co. v. Tully & DiNapoli, Inc., supra. The court also found that WISCO's negligence carried with it liability to Pac-Mar for the value of a scoopmobile lost when the barge sank and to Wilhelmsen for the detention of and damage to the Turandot.
 
 
 6
 " The findings of a district court sitting without a jury in admiralty are tested by the clearly erroneous standard." Midland Enterprises, Inc. v. Notre Dame Fleeting & Towing Service, Inc., 538 F.2d 1356, 1357 (8th Cir. 1976). See also United States v. Babbs, 483 F.2d 308, 311 (9th Cir. 1973); Ramos v. Matson Navigation Co., 316 F.2d 128, 131 (9th Cir. 1963). Here, a careful review of the record convinces us that the findings of the trial court are supported by the evidence, and we therefore adopt those essential findings and the law as applied to them.
 
 
 7
 Pac-Mar contends that the trial court's failure to find negligence on its part exonerates it from all liability. As the trial court held, however, Pac-Mar was obligated to have the barge properly cared for by any person to whom it was entrusted, and risked liability for damage caused by the negligence of a third party. George Bohannon Transportation, Inc. v. Davis, 323 F.2d 755, 756 (10th Cir. 1963); Shamrock Towing Co. v. Tully & DiNapoli, supra; The Comet, 66 F.Supp. 231, 233 (E.D.Pa.1946). We have considered the additional authorities submitted by Pac-Mar and do not find them persuasive. Midland Enterprises Inc. v. Notre Dame Fleeting & Towing Service, Inc.,supra, was a case of an unexplained sinking of a barge under charter, in which the district court was unable to determine the cause of sinking. The charterer relied upon the rule that failure of a bailee to return the barge after bailment raised an inference of negligence on the bailee's part. Recognizing the validity of such an inference, the court held that it had been overcome by the bailee's proof that it had exercised reasonable care, thereby dispelling the inference and requiring the bailor to sustain its continuing burden of persuasion, which it had failed to do. See Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110-11, 62 S.Ct. 156, 86 L.Ed. 89 (1941); Chanler v. Wayfarer Marine Corp., 302 F.Supp. 282, 285 (D.Me.1969). Midland Enterprises is not contrary to our holding here. Here, there was abundant evidence pointed out by the trial court to establish the negligence of WISCO, to whom this barge had been entrusted by Pac-Mar, the bailee. Since a bailee is responsible for the negligence of a third party to whom it has entrusted the bailment, Pac-Mar is secondarily liable to Western and Wilhelmsen.
 
 
 8
 In support of its contention that the district court erred in awarding removal expenses to Western, WISCO argues that Western had no liability for removal under 33 U.S.C. § 409. It contends that since Western had no duties under this statute, it acted as a "volunteer" with no legal right to collect from the responsible parties. WISCO has failed to appreciate the substantial liabilities that Western encountered, however. In pertinent part,33 U.S.C. § 409 provides that "it shall be the duty of the owner of (a) sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States." Since Western risked forfeiture of Barge to the United States, it is naive for WISCO to maintain that Western had no vested interest in the fate of its craft. Having protected its rights pursuant to the statute, Western could collect its expenses from the negligent party who caused the damage.
 
 
 9
 The necessity and reasonable desire to save Barge from abandonment are enough to justify the court's ruling in favor of Western. The issue of whether or not, assuming the United States had removed the craft, Western would have been legally responsible for the cost of removal should not obscure Western's right to protest its property and to recover from the negligent party. Decisions stating that the United States may recover removal damages against an owner who negligently causes the sinking of his craft, Wyandotte Co. v. United States, 389 U.S. 191, 204-09, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); In re Pacific Far East Line, Inc., 314 F.Supp. 1339, 1348-49 (N.D.Cal.1970), aff'd, 472 F.2d 1382 (9th Cir. 1973), like earlier cases holding that the Government has no right of recovery, United States v. Bethlehem Steel Corp., 319 F.2d 512 (9th Cir. 1963), cert. denied, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964), have little bearing on the right of an owner to collect from a negligent party who has jeopardized his property. If anything, the Court's language in Wyandotte about refusing to let "a wrongdoer (shift) responsibility for the consequences of his negligence onto his victim" supports Western's recovery. 389 U.S. at 204, 88 S.Ct. at 387. Similarly, the possibility, cited by WISCO, that the charterer, and not the legal owner, is responsible for complying with the statute, In re Marine Leasing Services, Inc., 328 F.Supp. 589, 599-600 (E.D.La.1971), aff'd, 471 F.2d 255 (5th Cir. 1973), does not detract from Western's basic right of recovery.
 
 
 10
 The judgment is affirmed. The claims presented to us to assess damages for a frivolous appeal are rejected.